In re Russell L. MOORE, Sr., Debtor.

Russell L. MOORE, Sr., Plaintiff,

v.

MID-PENN CONSUMER DISCOUNT CO., Defendant.

Bankruptcy No. 90–10760S.
Adv. No. 90–0242S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 2, 1990.

Paul A. Brooks, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff-debtor.

Edward Sparkman, Philadelphia, Pa., Chapter 13 Standing Trustee.

Arthur J. Matusow, Philadelphia, Pa., for Mid–Penn Consumer Discount Co.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The Debtor herein seeks to parlay a technical violation of the federal Truth in Lending Act, 15 U.S.C. § 1601, et seq. ("TILA")

—the creditor's failure to expressly disclose that the Debtor could obtain fire insurance from an insurer of his choice—into an erroneous disclosure of the finance charge in a loan transaction, entitling the Debtor to the drastic consequences resulting from a rescission of the loan contract. However, as we explained in *In re Brown*, 106 B.R. 852, 853, 856–57 (Bankr.E.D.Pa. 1989), in light of the "simplification" of the TILA in 1980, violations which remain viable under the TILA, as "simplified," must be deemed subject to the full force of TILA remedies. Therefore, even though Mid–Penn's violation of the TILA is technical, the Debtor is entitled to the full panoply of consequences arising from a creditor's failure to honor a valid demand for rescission: elimination of finance charges and recoupment which decimates the claim, an award of statutory damages of $1,000 in favor of the Debtor, and a right of his counsel to collect his reasonable attorney's fee from the creditor.

### B. PROCEDURAL AND FACTUAL HISTORY

The Debtor, RUSSELL L. MOORE ("the Debtor"), filed a Chapter 13 bankruptcy case on February 21, 1990. The instant adversary proceeding, naming MID–PENN CONSUMER DISCOUNT CO. ("Mid–Penn") as a defendant, was commenced on April 17, 1990. On July 12, 1990, the proceeding came before us for a trial, at which the Debtor and Mid–Penn's President, Edwin Seave, Esquire ("Seave"), testified briefly. Since the Debtor had submitted a Trial Memorandum, the post-trial submissions included only a Brief from Mid–Penn and a Reply Brief from the Debtor, to be filed on or before July 26, 1990, and July 30, 1990, respectively.

The facts are almost entirely undisputed. The Debtor, an elderly widower, made a loan from Mid–Penn on July 15, 1988. In the year prior to making the loan, the Debtor had liquidated the original mortgage on his home at 713 South 59th Street, Philadelphia, Pennsylvania 19143 ("the Home"). Per Seave, it was established that Mid–Penn typically requires that borrowers use their homes as collateral for its loans.

Therefore, it logically also requires that borrowers' homes which are used as collateral be insured. If a borrower has an outstanding prior mortgage, Mid–Penn assumes that the home is insured. If no mortgagee exists, Mid–Penn orally advises its borrowers that they must establish that they have adequate insurance on their home, or they must either obtain such insurance or allow Mid–Penn to obtain insurance on it for them from Lloyds of London through the Sidney Rosenfeld Agency ("Rosenfeld").

Although the Debtor did not recall same, we find that Mid–Penn, pursuant to its regular practices in a situation where the only prior mortgage was liquidated, as described above, asked him to verify his insurance coverage. In response, the Debtor gave Mid–Penn an "Amended Declaration," indicating that he had insurance coverage for the Home from the American Bankers Insurance Company of Florida ("Bankers") for the year ending July 10, 1988, at a cost of $204.

Noting that the coverage of the Bankers policy had recently lapsed, due to neglect which the Debtor attributed to the fact that his late wife had usually tended to such matters, Mid–Penn undertook to renew the Bankers policy. To this end, it required the Debtor to borrow $204 of additional funds from it to finance the renewal of Bankers' insurance policy.

The TILA disclosure statement ("the DS") given to the Debtor by Mid–Penn in connection with the transaction accurately disclosed the payment of $204 to Bankers for the fire insurance renewal. However, neither the DS, nor any other document provided to the Debtor by Mid–Penn, stated that insurance coverage on the Home could be obtained from a person of the Debtor's choice. Nevertheless, the amount of the insurance premium was not included in the amount of the Finance Charge computed in the transaction, but added onto the balance of the principal borrowed. As disclosed, the Amount Financed in the loan was $1,554.08, including $1,306.58 given directly to the Debtor, $43.50 paid for filing the mortgage and purchasing credit-life insur-

ance, and the $204 paid to Bankers. The Finance Charge disclosed was $413.92, at an Annual Percentage Rate of 23.79 percent. The loan was to be repaid in 24 payments of $82.00 monthly, a total payout of $1,988.00.

Subsequent to its remittance of the $204 to Bankers on behalf of the Debtor, Mid–Penn received notice that Bankers would not renew the policy again. It then obtained coverage through Rosenfeld. Although the coverage limit of the new policy was higher than the amount of Bankers' policy, the cost of the policy obtained through Rosenfeld was only $175. Mid–Penn therefore refunded $29 to the Debtor.

Mid–Penn filed a secured Proof of Claim in the Debtor's bankruptcy case, itemized as follows:

CALCULATION OF BALANCE DUE

| | |
|---|---|
| Principal Amount | $1210.51 |
| Late charges | none |
| Legal costs | 230.50 |
| Add'l interest from 10% 2/21/90 to 2/21/95— | 332.66 |
| TOTAL | $1773.67 |

Expiration date of Loan is 7/15/88

The total sum of $1773.67 is to be paid inside of Plan. The sum of $ none is to be paid directly to Mid–Penn Consumer Discount Company.

In his Complaint attacking this proof of claim, the Debtor alleged that he had validly rescinded the loan per a letter to Mid–Penn from his counsel dated December 7, 1989. *See* 15 U.S.C. § 1635(f). Seave had responded to this letter by his own letter of December 11, 1989, indicating that he believed that the attempt to rescind lacked merit. In addition to raising the TILA issues, the Debtor alleged that the claim for "additional interest" was "not owed, or ... excessive."

C. MID–PENN'S FAILURE TO EXPRESSLY DISCLOSE TO THE DEBTOR THAT HE HAD THE RIGHT TO CHOOSE THE INSURER OF THE HOME PRECLUDES MID–PENN FROM EXCLUDING THE COST OF THE INSURANCE FROM THE FINANCE CHARGE, AND RENDERS THE DEBTOR'S RESCISSION OF THE TRANSACTION VALID.

■ The pertinent provision of the TILA, dictating when a creditor may exclude pre-

miums for property insurance from the finance charge in a loan transaction is 15 U.S.C. § 1605(c), which states as follows:

(c) *Charges or premiums for insurance, written in connection with any consumer credit transaction, against loss of or damage to property* or against liability arising out of the ownership or use of property, *shall be included in the finance charge unless a clear and specific statement in writing is furnished by the creditor to the person to whom the credit is extended, setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained* (emphasis added).

The corresponding Regulation, appearing at 12 C.F.R. § 226.4(d)(2), states as follows:

(2) *Premiums for insurance against loss of or damage to property,* or against liability arising out of the ownership or use of property, *may be excluded from the finance charge if the following conditions are met:*

(i) *The insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed.*
(ii) If the coverage is obtained from or through the creditor, the premium for the initial term of insurance coverage shall be disclosed. If the term of insurance is less than the term of the transaction, the term of insurance shall also be disclosed. The premium may be disclosed on a unit-cost basis only in open-end credit transactions, closed-end credit transactions by mail or telephone under section 226.17(g) and certain closed-end credit transactions involving an insurance plan that limits the total amount of indebtedness subject to coverage (footnotes omitted) (emphasis added).

We also note the relevant portion of the Official Staff Commentary on Regulation Z Truth in Lending ("the Commentary"), which, at ¶ 226.4(d)8, states as follows:

8. *Property insurance. To exclude property insurance premiums or*

charges from the finance charge, the creditor must allow the consumer to choose the insurer and disclose that fact. This disclosure must be made whether or not the property insurance is available from or through the creditor. The requirement that an option be given does not require that the insurance be readily available from other sources. *The premium or charge must be disclosed only if the consumer elects to purchase the insurance from the creditor;* in such a case, the creditor must also disclose the term of the property insurance coverage if it is less than the term of the obligation (emphasis added).

The pertinent statute, 15 U.S.C. § 1605(c) was unchanged by the 1980 amendments which "simplified" the TILA. Prior to 1980, however, the correlative Regulations, appearing at 12 C.F.R. §§ 226.4(a)(6) and (h), provided as follows:

(a) **General rule.** Except as otherwise provided in this section, *the amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer,* and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, *including any of the following types of charges:*

.   .   .   .   .

(6) *Charges or premiums for insurance, written in connection with any credit transaction, against loss of or damage to property* or against liability arising out of the ownership or use of property, *unless a clear, conspicuous, and specific statement in writing is furnished by the creditor to the customer setting forth the cost of the insurance if obtained from or through the creditor and stating that the customer may choose the person through which the insurance is to be obtained.*

.   .   .   .   .

**(h) Computation of insurance premiums.** If any insurance premium is required to be included as a part of the finance charge, the amount to be included shall be the premium for coverage extending over the period of time the creditor will require the customer to maintain such insurance. *For this purpose, rates and classifications applicable at the time the credit is extended shall be applied over the full time during which coverage is required,* unless the creditor knows or has reason to know that other rates or classifications will be applicable, in which case such other rates or classifications shall be used to the extent appropriate (footnotes omitted) (emphasis added).

Hence, the new version of Regulations has "simplified" the undertakings of the creditor necessary to exclude property insurance premiums from the finance charge in a loan transaction in certain respects. The requirements appearing in former 12 C.F.R. § 226.4(h) that the applicable "rates and classifications" be disclosed have been excised.

However, all versions of the Regulations emphasize that the creditor must clearly and conspicuously disclose to the borrower that the insurance may be obtained from a person of the borrower's choice if the premiums charged are to be excluded from the finance charge disclosed in the transaction. It is this requirement which Mid–Penn has failed to fulfill.

In its post-trial submission, Mid–Penn argues that "[t]he crucial question to be decided is whether there was a purchase of insurance made 'from or through' the creditor." Memorandum of Law of Defendant, Mid–Penn Consumer Discount Co., at 4. Were this assertion so, Mid–Penn might prevail. However, we should observe that we do not necessarily agree with Mid–Penn's further statement that all that it did was "renew a pre-existing policy." *Id.* It is true that this is what it attempted to do initially. However, when it could not do so, what it ended up doing *was* obtaining insurance for the Debtor, through its own efforts, when its attempt to renew the Debtor's pre-existing policy failed.

■ More importantly, in any event we find that the requirement that the creditor advise the consumer that it may choose the insurer is not dependent upon the fact that the insurance is obtained "from or through" the creditor. Rather, this disclosure-of-choice of the insurer to the borrower is a pre-condition in *any* instance in which the creditor seeks to exclude the property insurance premiums from the finance charge.

The need to make the disclosure of the right to choose the insurer is made particularly clear in the contemporary Regulation and Commentary quoted above. The Regulation states that the disclosure-of-choice is required without qualification. The Commentary further expressly states that the disclosure-of-choice must be made whether property insurance is purchased "from or through" the creditor or not. The statute is somewhat less clear, because the phrase "if obtained from or through the creditor" appears before the clause setting forth the disclosure-of-choice requirement. However, the placement of commas makes it clear that the phrase "if obtained from or through the creditor" modifies only the requirement that the cost of the insurance be disclosed. Therefore, the cost of the insurance must be disclosed if and only if the insurance is purchased from or through the creditor. However, the disclosure-of-choice requirement applies in any instance where the creditor endeavors to exclude the premiums from the finance charge.

The fact that the disclosure-of-choice requirement is separate from the requirement to disclose the cost of insurance is made particularly clear in two cases, *Burton v. G.A.C. Finance Co.,* 525 F.2d 961, 964–65 (5th Cir.1976); and *In re Steinbrecher,* 110 B.R. 155, 163–64 (Bankr.E.D. Pa.1990). In *Steinbrecher, id.,* Judge Fox of this court clearly dichotomizes between the

two disclosure requirements necessary in order for Mid–Penn to properly place the insurance charge in the amount financed: first, the borrowers were to be informed

that the insurance could be obtained by anyone of their choosing; and the term of the insurance policy was to have been disclosed (footnote omitted).

In *Burton*, after commenting that a disclosure that "the cost of such insurance(s) may be obtained by the borrower through any person of his choice" was unclear, 525 F.2d at 964, the court concludes that the notice was defective because "[i]t did not advise [the borrower] that he had the right to purchase the insurance from that source [a person of his choice]." *Id.* at 965.

The strongest logical argument that Mid–Penn can make is that the Debtor himself, though perhaps unwittingly, suggested the identity of the initial property insurer by giving Mid–Penn the Amended Declaration from Bankers for the previous year. However, there was no evidence of any communication from or to the Debtor from Mid–Penn regarding the Debtor's Option to choose the insurer. Apparently, the Debtor simply produced the Amended Declaration to Mid–Penn at its request without being certain of the consequences of doing so.

■ It must be recalled, in any event, that any such communications would be irrelevant, since this Circuit, *see Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 441–43 (3d Cir.1977), adheres to the "one-document rule." Application of this rule here requires that the disclosure-of-choice be included in the TILA DS itself, not communicated orally or through other documents. *Accord,* 12 C.F.R. § 226.17(a)(1); *Edmondson v. Allen–Russell Pontiac Co.*, 577 F.2d 291, 295 n. 9 (5th Cir.1977); *Werts v. Federal National Mortgage Ass'n*, 48 B.R. 980, 983 (E.D.Pa. 1985); *Bookhart v. Mid–Penn Consumer Discount Co.*, 559 F.Supp. 208, 211 (E.D. Pa.1983); *In re Tucker*, 74 B.R. 923, 930 (Bankr.E.D.Pa.1987); and *In re Martin*, 72 B.R. 126, 129 (Bankr.E.D.Pa.1987).

■ The violation of the TILA in issue is technical. The Debtor can hardly dispute Mid–Penn's salutary efforts to make sure the Home was insured and in acquiring cheaper and better coverage than he previously had from Bankers and refunding him the difference. However, as *Brown, supra,* emphasizes, the technical nature of the TILA violation in issue and the good faith intentions of the creditor are irrelevant to its actionability. 106 B.R. at 856–57. *Accord, e.g., Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir.1990); and *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 249–50 (3d Cir.1980). As *Brown* also teaches, when any violation renders the disclosure of the finance charge set forth on the DS erroneous, a "material violation" of the TILA is established, triggering any and all of the serious consequences of permitting the borrower to rescind a loan in which a security interest is taken upon the borrower's residence, and unlocking a series of substantial additional adverse consequences to a creditor who attempts to deny the borrower's valid right to rescind. 106 B.R. at 857–62. Since Congress did not choose to alter these consequences in its "simplification" of the TILA, we must assume that it meant courts to continue to impose them, *id.* at 856–58, and we must proceed to do so.

**D. THE DEBTOR'S VALID RESCISSION OF THE TRANSACTION RESULTS IN ELIMINATION OF MID–PENN'S CLAIM AND AN AWARD OF STATUTORY DAMAGES AND ATTORNEY'S FEES IN FAVOR OF THE DEBTOR.**

■ The consequences of an effective rescission, which the creditor refuses to acknowledge or properly act upon within the requisite 20–day period allotted for doing so, 15 U.S.C. § 1635(b), 12 C.F.R. § 226.23(d)(2), are severe. Firstly, the security interest taken by Mid–Penn against the Debtor's Home is eliminated. 15 U.S.C. § 1635(b), 12 C.F.R. § 226.23(d)(1). *See Brown, supra,* 106 B.R. at 862, and cases cited therein. Consequently, Mid–Penn's status is reduced to that of an unsecured creditor.

■ Secondly, the Debtor is entitled to a claim of recoupment against Mid–Penn in an amount equivalent to the statutory damages to which the Debtor would be entitled under the TILA. *See id.* The statutory

damages are measured by double the amount of the finance charges imposed in the transaction, up to $1,000. 15 U.S.C. § 1640(a)(2)(A)(i). Although the finance charges, as disclosed on the DS presented to the Debtor, were only $413.92, the $175 actually charged to the Debtor by Mid–Penn for insurance on the Home *should* have been an additional component of the finance charge, bringing the correct amount of the finance charges to well over $500, and thereby entitling the Debtor to the $1,000 maximum statutory penalty.

Thirdly, the Debtor is relieved of any liability to pay any finance charges to Mid–Penn in the transaction. *See Brown*, 106 B.R. at 862 and cases cited therein. Therefore, the Debtor's obligation to Mid–Penn is reduced to the sums actually given to him in the transaction which were not properly components of the finance charge, which consists of $1,306.58 presented directly to the Debtor and the additional charges not includable in the finance charge of $43.50, or a total of $1,350.08. The Debtor is entitled to credit his payments on the loan against this sum.

■ While the Debtor asserts, in his Trial Memorandum, that he has made payments of $646 to Mid–Penn, we can find no support in the record for this conclusion. However, it is clear that he has made at least some payments to Mid–Penn. The original total of payments in the loan contract was $1,988. The balance requested in the proof of claim is only $1,210.51. It is also clear, as we observed at the trial, that Mid–Penn's appendage of "additional interest" of $332.66 to its proof of claim is improper. This figure represents the "deferral charge" to which Mid–Penn claims that it is entitled under 11 U.S.C. § 1325(a)(5)(B)(ii). As we explained in *In re Jordan*, 91 B.R. 673, 677–78 (Bankr.E.D. Pa.1988), such a "deferral charge" is not a proper component of a proof of claim. Rather, if there is a failure on the part of the Debtor to provide for an appropriate "deferral charge" in its plan, this constitutes a basis for an objection to confirmation. *See In re Szostek*, 886 F.2d 1405, 1410–14 (3d Cir.1989). Such a demand is particularly inappropriate here, because the Debtor's TILA's claims not only decrease, but serve to eliminate entirely, Mid–Penn's claim.

Any claim of Mid–Penn is, by reason of the elimination of its secured interest, unsecured. The elimination of the element of "additional interest" brings the amount of its claim down to $1,441.01. The $1,000 TILA recoupment claim reduces this claim still further to $441.01. While the exact amount paid to Mid–Penn by the Debtor is unclear, it clearly exceeded $441.01. A balance of $1,988 was reduced to $1,210.51. Therefore, Mid–Penn's claim must be eliminated entirely.

■ Finally, the Debtor is also entitled to a statutory penalty of $1,000 arising from Mid–Penn's violation of the TILA in failing to respond to his valid rescission of the loan transaction in appropriate fashion and reasonable attorneys' fees and costs for his counsel under 15 U.S.C. § 1640(a)(3). *See Brown, supra,* 106 B.R. at 862.

## E. CONCLUSION

An Order consistent with the conclusions reached herein will be entered.

### ORDER

AND NOW, this 2nd day of August, 1990, after a trial of the above-entitled proceeding on July 12, 1990, and upon consideration of the submissions of the parties, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Plaintiff–Debtor, RUSSELL L. MOORE, SR. ("the Debtor"), and against the Defendant, MID–PENN CONSUMER DISCOUNT CO. ("Mid–Penn").

2. It is DECLARED that the Debtor properly exercised his right to rescind the contract of July 15, 1988, in issue and that therefore this contract is deemed RESCINDED.

3. All claims of Mid–Penn against the Debtor are STRICKEN.

4. Mid–Penn is directed to satisfy the mortgage which it has taken against the

Debtor's residential real estate at 713 South 59th Street, Philadelphia, Pennsylvania 19143, within fifteen (15) days from the date of this Order.

5. Mid–Penn shall pay the sum of $1,000.00 to the Standing Chapter 13 Trustee, Edward Sparkman, Esquire, as damages pursuant to 15 U.S.C. § 1640(a)(2)(A)(i). The said Trustee shall determine whether this sum may be claimed as part of the Debtor's exemptions, and, if it may be, he shall forward this sum to the Debtor forthwith.

6. The parties are urged to attempt to agree upon reasonable attorneys' fees and costs which are due to the Debtor's counsel pursuant to 15 U.S.C. § 1640(a)(3). If this matter is not resolved within fifteen (15) days, the Debtor's counsel may, within thirty (30) days of this Order, file a Motion requesting such fees, said Motion to be procedurally in conformity with *Meade Land & Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates*, 78 B.R. 41 (Bankr.E.D.Pa.1987). However, if the Debtor's counsel has made a reasonable request for such fees which is refused, the said counsel may recover compensation for time spent on the fee application as well.