John M. ROWLAND and Carol
S. Rowland, Plaintiffs,

v.

MAGNA MILLIKIN BANK
OF DECATUR, N.A.,
Defendant.

No. 91–1055.

United States District Court,
C.D. Illinois,
Peoria Division.

Dec. 4, 1992.

Barry M. Barash, Barash Stoerzbach & Henson, Galesburg, IL, for plaintiffs.

Jeff Justice, Hull Campbell & Robinson, Decatur, IL, for defendant.

## ORDER

McDADE, District Judge.

Before the Court are cross motions for summary judgment filed by Plaintiffs, John and Carol Rowland; and Defendant, Magna Bank of Central Illinois. Plaintiffs' complaint is in two counts alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq (TILA), on the part of Defendant. This Court has jurisdiction of this case pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331. In Count I, Plaintiffs seek rescission of a Retail Installment Contract entered into between Plaintiffs and Defendant. 15 U.S.C. § 1635. In Count II, Plaintiffs seek civil liability against Defendant for failing to comply with the provisions of the TILA. 15 U.S.C. § 1640. For the reasons stated herein, the Court GRANTS in part and DENIES in part Plaintiffs' Motion for Summary Judgment on Count I, and DENIES Plaintiffs' Motion for Summary Judgment on Count II. (# 12 & # 15). Additionally, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment on Count I and GRANTS Defendant's Motion for Summary Judgment on Count II. (# 12 & # 15).

## BACKGROUND

According to the deposition of John Funk, Defendant's Assistant Vice President in the Retail Lending Department, Nu View Window of Illinois, Inc. (Nu View) presents about 400 contracts a year to Defendant for the financing of window sales to Nu View customers. The total amount of home improvement business which Defendant and Nu View transact each year amounts to approximately $1,000,000.00 (one million dollars). (Funk deposition, pp. 8–9). What follows is a chronological series of events involving Plaintiffs, Defendant, and Nu View.

On December 5, 1988, Plaintiffs met with a sales representative from Nu View and agreed to buy six windows for $4,364.00 (four thousand three hundred sixty-four dollars). (J. Rowland Deposition pp. 9–10,

Defendant's deposition exhibit #1). On that date, Plaintiffs and the sales representative also partially completed a Retail Installment Contract (Plaintiffs' exhibit #1),[1] and a Notice of Right of Rescission. (Plaintiffs' exhibit #6), The Rescission Notice stated that the date of the transaction was December 5, 1988, and that Plaintiffs had until midnight of December 8, 1988, to exercise their rescission rights. *Id.* On December 13, 1988, Plaintiffs mortgaged their home to Defendant to secure payment of a note in the amount of $4,364.00 (four thousand three hundred sixty-four dollars). (Plaintiffs' exhibit #7). On December 14, 1988, Defendant notified Plaintiffs that their credit was satisfactory for the amount of $4364.00 (four thousand three hundred 64 dollars) for 60 months. On January 18, 1989, Defendant dated its copy of the Retail Installment Contract. (Unmarked exhibit attached to Defendant's brief, Doc #15; Funk Dep. p. 20, see Plaintiffs' exhibit #5). On January 25, 1989, the Plaintiffs' mortgage of their home to Defendant was recorded. (Plaintiffs' exhibit #7). On February 5, 1991, Plaintiffs, by letter to Defendant, rescinded the transaction and demanded release of their mortgage on their residence. (Plaintiffs' Exhibit #2). On February 12, 1991, Defendant refused to terminate the transaction or release the mortgage. The instant action was filed on March 26, 1991, and on June 13, 1991, Defendant released the mortgage.

Of key significance to the present action are the differences between the Plaintiffs' copy of the Retail Installment Contract and the Defendant's copy of the Installment Contract. The following is a discussion of those differences.

Attached to Plaintiffs' Complaint as Plaintiffs' Exhibit #1 is the original buyer's copy of the Retail Installment Contract. This copy was the one which Plaintiffs' kept in their possession. Most notably, Plaintiffs' copy of the contract is almost completely illegible. For instance, in the box marked **"TRUTH IN LENDING DISCLOSURES,"** (federal box) it is impossible to accurately determine the finance charge and the total of payments, and the total sale price is too blurred to attempt to make an accurate reading. The contract states that payments are due "45 days after installation," but no specific date is given. Additionally, the contract is not dated and bears only the signature of John Rowland.

Another copy of the contract which was submitted by Defendant but not marked as an exhibit (this copy of the contract is the same as Plaintiffs' #5) contains some significant differences from Plaintiffs' copy of the contract. This copy of the contract is completely legible. Furthermore, the contract bears not only the signature of John Rowland, but also the signatures of Carol Rowland and Tamela Huff, the Office Manager of Nu View, Inc. Additionally, the contract bears the date "1–18–89" in the upper right hand corner. Most importantly, the federal box clearly shows the finance charge, total of payments, and total sale price. Moreover, the federal box not only states that payments are due "45 days after installation," but also gives the date 3–4–89." Several other differences exist between the two contracts but need not be discussed here.

## ANALYSIS

"A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This Court must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Holland v. Jefferson National Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989). When faced with a motion for summary judgment, the non-moving party may not rest on its pleadings. Rather, it is neces-

---

**1.** The Plaintiffs' copy of the Retail Installment contract was never dated, though part of the contract was completed on 12–5–1988.

sary for the non-moving party to demonstrate, through specific evidence, that there remains a genuine issue of triable fact. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

■ Initially, the Court notes that TILA "must be liberally construed in favor of the consumer." *Davis v. Werne*, 673 F.2d 866, 869 (5th Cir.1982). Furthermore, "TILA requirements are enforced by imposing a sort of strict liability in favor of consumers who have secured financing through transactions not in compliance with the terms of the Act. 'It is strict liability in the sense that absolute compliance is required and even technical violations will form the basis for liability.' " *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F.Supp. 1295, 1299 (D.Del.1990) (citations omitted). In *Smith v. No. 2. Galesburg Crown Finance Corp.*, 615 F.2d 407 (7th Cir.1980), the Seventh Circuit provided the Court with clear guidelines for evaluating complaints of violations of the Act. *Smith* stated:

It is not sufficient to attempt to comply with the spirit of TILA in order to avoid liability. Rather, strict compliance with the required disclosures and terminology is required. Many violations of TILA involve technical violations without egregious conduct of any kind on the part of the creditor. However, congress did not intend that the creditors should escape liability for merely technical violations. Thus, while it may be true, in some sense ... that the terminological violations here are inconsequential, the fact remains that they are violations. Any misgivings which creditors may have about the technical nature of the requirements should be addressed to Congress or to the Federal Reserve Board, not to the courts.... We will therefore require strict adherence to the required terminology under the statute and regulations, and we will not countenance deviations from those requirements, however minor they may be in some abstract sense. *Id.* at 416–417. (citations omitted).

In the case at bar, Plaintiffs seek to rescind the transaction into which they entered. A right of rescission exists "[i]n a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling...." 12 C.F.R. § 226.23(a). A security interest was retained in the case at bar, giving Plaintiffs a right to rescind.

In its Motion for Summary Judgment, Defendant argues that Count I is time-barred because Plaintiffs failed to exercise their right to rescind within the applicable statute of limitations. 15 U.S.C. § 1635(a) states in pertinent part:

Except as otherwise provided in this section ... the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the *material disclosures* required under this subchapter, whichever is later, by notifying the creditor in accordance with the regulations of the Board, of his intentions to do so.

*Id.* (emphasis added).

In the event that the obligor fails to receive the required information, forms and disclosures, subsection (f) sets out a three-year time limit for the obligor to exercise the right of recision. Specifically, subsection (f) states:

An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor....

15 U.S.C. § 1635(f).

The Code of Federal Regulations also discusses the right of rescission and the attendant time limits. 12 C.F.R. 226.-23(a)(3) states:

The consumer may exercise the right to rescind until midnight of the third business day following consummation,

delivery of the notice required ... or delivery of all *material disclosures,* whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation....

*Id.* (emphasis added).

For the purposes of rescission, "[t]he term *material disclosures* means the required disclosures of the annual percentage rate, the finance charge, the amount financed, and the payment schedule." 12 C.F.R. § 226.23(a)(3) n. 48. These disclosures must be made "clearly and conspicuously in writing in a form that the consumer may keep." 12 C.F.R. § 226.17(a).

In applying the law to the facts in the case at bar, the Court must first determine whether a consumer-creditor relationship was established. The parties have not disputed that a consumer-creditor relationship existed, and the Court finds that Plaintiffs' were consumers and Defendant a creditor in the instant action.

■ The next issue for the Court to determine is the date of consummation of the contractual relationship. Consummation "means the time that a consumer becomes contractually obligated on a credit transaction. *Id.* at (a)(13). Although the parties do not dispute that the transaction was consummated, they offer four separate consummation dates: (1) December 5, 1988, the date Plaintiffs signed the contract and received the rescission notice; (2) December 13, 1988, the date Plaintiffs mortgaged their home; (3) December 14, 1988, the date Defendant notified Plaintiffs by mail that the loan was approved; and (4) January 18, 1988, the date on Defendant's copy of the contract. Here, the Court finds that the contract was consummated on December 5, 1988, because that was the date Plaintiffs contracted for financing and became bound to the credit terms. See, 12 C.F.R. § 226 Sup. I subpart A § 226.2(a)(13) 1 and 2.

■ The Court must next determine whether the required disclosures were properly made. If the disclosures were proper, Plaintiffs had three days to rescind the contract after December 5, 1988. If

the disclosures were improper, then Plaintiffs would have had three years to rescind the contract. See, 15 U.S.C. § 1635(a) & (f); 12 C.F.R. 226.23(a)(3) (1992).

■ As previously mentioned, one of the problems with the Plaintiffs' copy of the contract is the illegibility of the disclosures. According to *Smith,* 615 F.2d at 418 "[n]othing can be more central to the entire scheme of TILA than the notion that disclosures made must be legible. The required disclosures become meaningless if the consumer is unable to decipher them." *Id.* The regulations also require that "the disclosures must be legible, whether typewritten, handwritten, or printed by computer." 12 C.F.R. part 226, supp. I, subpart C, § 226.17(a) para. 1, p. 359 (1992).

Certainly, the blurred and illegible disclosures on the Plaintiffs' copy of the contract were not clearly and conspicuously made as required by 12 C.F.R. § 226.6(a). Accordingly, under *Smith,* the Court finds that Defendant failed to make material disclosures because many of the disclosures were illegible. The Court notes that other copies of the contract were legible, but the Act mandates that "[t]he creditor shall make the disclosures required by this subpart clearly and conspicuously in writing in a form that the consumer may keep." *Id.* at 226.17(a). As noted above, the copy of the contract that the customer was allowed to keep did not contain clear and conspicuous disclosures.

The Court also notes that the Defendant did mail a letter to Plaintiffs on December 14, 1988, which clearly stated the net amount of the note at $4364.00, the face amount of the note at $6127.80, the monthly installments of $102.13 per month, and the annual percentage rate of 14%. (Defendant's deposition exhibit # 4). However, this letter did not state the finance charge, the most blurred of the disclosures on Plaintiffs' copy of the contract. Thus, Defendant has clearly violated 15 U.S.C. § 1632(a) which states that the finance charge "shall be disclosed more conspicuously than other terms ..." *Id.* Additionally, the letter did not state when the pay-

ments were to begin, thus the required payment schedule, which must reveal the timing of payments, was not disclosed. See 12 C.F.R. § 226.18(g). For the above stated reasons, the letter cannot be considered to have provided the required disclosures.

The Court also finds that Defendant's failure to include a specific date stating when payments were due on Plaintiffs' copy of the contract, constitutes a failure to make a material disclosure. As previously noted, failure to disclose the payment schedule is a material non-disclosure, and the payment schedule disclosure requires that the timing of payments be revealed. 12 C.F.R. § 226.18(g).

Plaintiffs also argue that Defendant failed to disclose that it had taken a security interest in Plaintiffs' home, but the regulations do not consider such a failure to amount to a material non-disclosure, and the issue will not be considered here. See, 12 C.F.R. § 226.23(a)(3) n. 48; *Shepeard,* 730 F.Supp. at 1303.

For the above stated reasons, the Court finds that Defendant failed to make certain material disclosures. Accordingly, the Court finds that Plaintiffs had three years and not three days in which to rescind the contract. Therefore, Plaintiffs' rescission was timely.

### DAMAGES

■ On page six of their Complaint, Plaintiffs seek the following relief regarding Count I: (a) rescission of the transaction; (b) a release of the record of the mortgage; (c) reasonable attorney's fees; (d) costs; and (e) such other proper relief. (Doc. # 1 p. 6). Count I was later amended to add paragraph (f) seeking "[j]udgment for all money or property given as earnest money, downpayment, or otherwise (including the monthly payments made by plaintiffs to defendant). 15 U.S.C. § 1635(b); Regulation Z §§ 226.15(d)(2) and 226.-23(d)(2)." (# 11). The Court finds that Defendant failed to disclose material information on the contract, and Plaintiffs' request for a rescission is GRANTED. Regarding the release of the mortgage, Plaintiffs and Defendant agree that Defendant delivered a release of the mortgage to Plaintiffs on June 13, 1991. The Court also finds that Plaintiffs are entitled to reasonable attorney fees and costs with respect to Count I. See, 15 U.S.C. § 1640(a)(3).

■ The Court's decision to grant Plaintiffs' rescission request warrants further discussion. The effects of rescission are governed by 15 U.S.C. § 1635(b). Having found that Plaintiffs are entitled to a rescission, the security interest automatically becomes void, *Id.,* and the Defendant must "take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.23(d)(2). In the case at bar, the Defendant has released the mortgage, thus fulfilling the above requirement of 15 U.S.C. § 1635(b).

Another consequence of rescission is that Plaintiffs are no longer liable under the terms of the transaction. Thus, Plaintiffs need not pay "any finance or other charge...." *Id.* Furthermore, the regulations dictate that "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction...." 12 C.F.R. § 226.23(d)(2). Recision, however, is an equitable remedy, and "the court may condition the return of monies to the debtor upon the return of property to the creditor." *Shepeard,* 730 F.Supp. at 1307, (quoting, *Rudisell v. The Fifth Third Bank,* 622 F.2d 243, 254 (6th Cir.1980)).

■ In a case similar to this in which a consumer received siding that could not be returned, the court held that the consumers were required to "tender the reasonable value of the property they received since they ... [could not] give back what they actually received...." *Rudisell,* 622 F.2d at 254. On this matter, the regulations provide that "the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value." 12 C.F.R. § 226.23(d)(3). The official comments to this section provide: .

If returning the property would be extremely burdensome, to the consumer, the consumer may offer to the creditor its reasonable value rather than return the property itself. For example, if building materials have already been incorporated into the consumer's dwelling, the consumer may pay their reasonable value.

12 C.F.R. § pt. 226, sup. I at 396 (1992).

In the case at bar, it would be equitable for Plaintiffs to pay the reasonable value of the windows installed at their home. Plaintiffs argue, however, that because they filed for bankruptcy on January 18, 1991, and were discharged on June 17, 1991, (Case No. 91–80120, Bankr.C.D.Ill.), they no longer need to tender the value of the windows as a condition of rescission. Plaintiffs cite several cases in support of their position, but in no way do these cases countenance the inequitable position taken by Plaintiffs. See, *In re Moore,* 117 B.R. 135 (Bankr.E.D.Pa.1990), aff'd 1991 WL 146241 (E.D.Pa.1991); *In re Perkins,* 106 B.R. 863 (Bankr.E.D.Pa.1989); *In re Brown,* 106 B.R. 852 (Bankr.E.D.Pa.1989); *In re Celona,* 90 B.R. 104 (Bankr.E.D.Pa. 1988), aff'd 98 B.R. 705 (E.D.Pa.1989); *In re Gurst,* 79 B.R. 969 (Bankr.E.D.Pa.1987).

Accordingly, the Court finds that Plaintiffs are entitled to a rescission of the contract they entered into on December 5, 1988, and Plaintiffs are "not liable for any finance or other charge." 15 U.S.C. § 1635(a). However, it would be impracticable for Plaintiffs to return the installed windows, and Plaintiffs must tender to Defendant the reasonable value of the windows, less the amount already paid. *Shepeard,* 730 F.Supp. at 1309. Neither party has provided evidence on the reasonable value of the windows. Accordingly, the Court finds that the parties do not dispute that the reasonable value of the windows is the contract price, $4364.00 (four thousand three hundred sixty-four dollars). *Id.* at 1307. Thus, Plaintiffs owe Defendant $4364.00 less the amount already paid on the windows.

In paragraph (f) of their amendment to Count I, Plaintiffs seek a return of any "money or property given as earnest money, downpayment, or otherwise (including the monthly downpayments made by plaintiffs to defendant...." (# 11). Such relief is proper under 15 U.S.C. § 1635(b). The evidence indicates, however, that Plaintiffs did not make a downpayment or tender earnest money, and the monthly payments are to be credited to the value of the windows. Accordingly, the Court DENIES Plaintiffs' request for relief under paragraph (f) of the amendment to Count I.

In their Motion for Summary Judgment, Plaintiffs requested judgment for twice the finance charge, not to exceed $1000.00, 15 U.S.C. § 1635(g) and 1640(a), and prejudgment interest. However, no such request was made in Count I of the Complaint, and such damages will not be allowed.

In Count II of the Complaint, Plaintiffs allege that they are entitled to statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A)(i). This section provides that "any creditor who fails to comply with any requirement imposed under this part including any requirement under section 1635 on this title ... with respect to any person is liable to such person ... for twice the amount of any finance charge ... except that liability shall not be less than $100 nor greater than $1,000...." *Id.* However, the statute of limitations provides that "[a]ny action under this section may be brought ... within one year from the date of the occurrence on the violation." *Id.* at § 1640(e). Defendant argues that because the alleged violation occurred more than one year prior to the filing of the lawsuit, Count II is time-barred. In response to Defendant's argument, Plaintiffs appear to argue that the violation occurred when Defendant failed to respond to Plaintiffs' rescission request of February 5, 1991. However, Count II of the Complaint does not seek damages for a violation concerning the rescission request of February 5, 1991, but for violations which occurred on December 5, 1988, the date of consummation. Accordingly, the violations for which Plaintiffs seek damages under Count II occurred more than

one year prior to the date Plaintiffs commenced the instant action and Count II is, therefore, time-barred. The Court further finds that Plaintiffs' argument concerning damages for failing to respond to the rescission demand cannot be considered to apply to Count I, because, as noted, Count I does not seek statutory damages under § 1640.

## CONCLUSION

For the above stated reasons, the Court GRANTS in part and DENIES in part Plaintiffs' Motion for Summary Judgment on Count I of Plaintiffs' Complaint. (# 12 & # 15). Additionally, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment on Count I. Plaintiff is GRANTED a rescission of the contract and reasonable attorney's fees and costs, but is DENIED all other relief requested in Count I. Plaintiff must also tender to Defendant the reasonable value of the windows, $4364.00 (four thousand three hundred sixty four dollars), less payments already made. Regarding the award of attorney's fees and costs, if the parties are unable to resolve the fee amount among themselves, Plaintiffs are directed to file with the Court a fee petition, together with supporting documentation, within thirty (30) days of the date of this Order. Defendant will have ten (10) days to respond to any motion for fees filed by Plaintiffs.

As to Count II, The Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment. (# 12 & # 15). The Clerk of the Court is Directed to enter judgment accordingly.