### Gladys WIGGINS, Plaintiff,

v.

### AVCO FINANCIAL SERVICES, et al., Defendants.

### Civil Action No. 98–502(GK).

United States District Court, District of Columbia.

Aug. 5, 1999.

---

Mark H. Steinbach, O'Toole, Rothwell, Nassau & Steinbach, Washington, DC, for Plaintiff.

Michael Alan Brown, Deborah K. St. Lawrence Charles, Brown, Diffenderffer, Wagonheim & Kearney, L.L.P., Baltimore, MD, Richard Frank Boddie, Slocum & Boddie, P.C., Springfield, VA, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

This matter comes before the Court on Plaintiff's Partial Motion for Summary Judgment [# 35] and Defendant AVCO Financial Services' ("AVCO") Cross–Motion for Summary Judgment [# 34].[1] Plaintiff, Gladys Wiggins, brings this action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), D.C.Code §§ 28–3904(a), (b), (d), (e), (f), (q), (t), and (dd), seeking to rescind a home improvement loan made to her by Defendant AVCO. Upon consideration of the motions, oppositions, replies, and the entire record herein, for the reasons stated below, Plaintiff's Motion for Partial Summary Judgment is granted and Defendant's Cross Motion for Summary Judgment is granted in part and denied in part.

1. Claims against other Defendants have been stayed pending the Court's resolution of these cross-motions for summary judgment.

2. Pursuant to Local Rule 108(h), "[i]n determining a Motion for summary judgment, the Court may assume the facts identified by the moving party in its statement of material facts

### I. Background [2]

Plaintiff owns and resides in a property at 3922 New Hampshire Avenue, N.W., in the District of Columbia. In September 1994, Plaintiff was contacted by an unlicensed home improvement contractor, Arctic Windows and Doors, Inc., also known as Weather–Guard Corporation ("Arctic"), with an offer to undertake home repairs. Plaintiff thereafter entered into a contract with Arctic on September 24, 1994. At the time, Plaintiff owned her home free and clear.

As a condition of the contract, Plaintiff authorized Arctic to secure financing on her behalf. On September 26, 1994, Arctic submitted a loan application to Coastal Mortgage Corporation ("Coastal"), a mortgage broker in the State of Maryland. On September 28, 1994, Coastal forwarded the loan application and a copy of Plaintiff's credit report to Defendant AVCO for approval. Plaintiff was pre-approved for a $70,000 loan on October 3, 1994.

In early October 1994, Coastal mailed a number of disclosure documents to Plaintiff, including an Estimate of Borrower's Settlement Costs, a Mortgage Brokers Agreement, and a Financing Agreement setting forth the terms of the loan. Plaintiff signed and returned these documents to Coastal on October 20, 1994.

On December 15, 1994, the parties met at the offices of Certified Title Corporation ("Certified"), a company retained by Defendant AVCO to handle all matters pertaining to the settlement and closing of the loan. At the closing, Plaintiff signed a number of documents, including a Note and Deed of Trust, granting Defendant a security interest in her home, as well as a Notice of Right to Cancel. The loan provided for 120 monthly payments of $719.49

are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the Motion." The Court thus takes these facts from the parties' Statements of Material Facts Not in Dispute. Unless otherwise noted, the Court states only uncontroverted facts.

with a balloon payment of $66,104.59 after ten years, at an annual percentage rate of approximately twelve percent. The closing documents were then forwarded to AVCO on December 20, 1994, after which Coastal disbursed two checks in the amount of $27,300 each to Plaintiff and Arctic jointly. Plaintiff endorsed both checks to Arctic the following day. Arctic never performed any of the contracted-for home improvement services.

Plaintiff defaulted on the loan in February 1995. On December 11, 1997, Plaintiff then gave notice to Defendant of her intent to rescind the loan.[3] This lawsuit followed.

## II. Standard of Review

A party against whom a claim ... is asserted ... may, anytime, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof .... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(b)-(c). The party seeking summary judgment bears the initial burden of showing an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether they have met this burden, a court must consider all factual inferences in the light most favorable to the nonmoving party. *McKinney v. Dole*, 765 F.2d 1129, 1135 (D.C.Cir.1985). Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *McKinney*, 765 F.2d at 1135. Moreover, as already noted, "[i]n

determining a Motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the Motion." Local Rule 108(h).

## III. Analysis

### A. TILA Claims

Plaintiff seeks a declaratory judgment that Defendant AVCO violated TILA by requiring her to sign on the day of closing a pre-printed statement which both acknowledged receipt of notice of the right to cancel and certified her decision not to cancel.

Congress passed the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, as a consumer protection measure in an age of expanding consumer credit. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). TILA, by its own terms, is designed to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices". 15 U.S.C. § 1601.

Because the loan in the instant case was secured with Plaintiff's primary residential property, TILA provides that "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms... together with a statement containing the material disclosures...." 15 U.S.C. § 1635(a). The statute further provides that "[t]he creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to

---

**3.** The record gives no indication of any actions taken by either party from the date of default to the date that Plaintiff gave notice of

rescission. Defendant indicates that Plaintiff has since refinanced her residential property and paid the loan in full.

this section the rights of the obligor under this section." *Id.* Notice of these rights must be provided to a consumer "on a separate document that identifies the transaction and... clearly and conspicuously discloses" information describing the transaction and the consumer's rights. 12 C.F.R. § 226.23(b)(1). If the creditor fails to comply with these requirements, the consumer's right to rescind is extended for up to three years. 12 C.F.R. § 226.23(a)(3).

■■■ Because TILA was passed, primarily, as an aid to the unsophisticated consumer, so that he or she would not be easily misled as to the total costs of financing, *Thomka v. AZ Chevrolet Inc.*, 619 F.2d 246, 248 (3rd Cir.1980), it is to be liberally construed in favor of borrowers. *Bizier v. Globe Financial Services*, 654 F.2d 1, 3 (1st Cir.1981); *see also Rodash v. AIB Mortgage Co.*, 16 F.3d 1142, 1145 (11th Cir.1994)(quoting *McGowan v. King Inc.*, 569 F.2d 845, 848 (5th Cir.1978)). Furthermore, a single violation of TILA, whether it be substantive or technical, extends a borrower's period for rescission. *Smith v. Fidelity Consumer Discount Company*, 898 F.2d 896, 898 (3d Cir.1990); *Semar v. Platte Valley Federal Savings & Loan Assoc.*, 791 F.2d 699, 704 (9th Cir. 1986).

All courts are agreed that alleged violations of TILA are subject to an objective standard of review. *Zamarippa v. Cy's Car Sales*, 674 F.2d 877, 879 (11th Cir. 1982). Courts have applied such an objective standard regardless of whether the borrower is a trained attorney [4] or simply an individual who had a sudden need for additional funds. A number of courts have further concluded that notice under TILA need not be absolutely perfect. It need only be clear and conspicuous. *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir.1996). So long as the intent of TILA is satisfied by the disputed notice provision, courts have generally ruled that it is the substance of the disclosure, not the

form that is controlling. *Joseph v. Norman's Health Club, Inc.*, 532 F.2d 86, 90 (8th Cir.1976).

Central to the dispute in this case is a document giving notice of Plaintiff's right to cancel her loan, informing her of the procedure to cancel, and permitting her to certify a decision not to cancel. Pl.'s Ex. 3A; Def.'s Ex. L. The one-page document consists of three sections stating in relevant part:

*NOTICE OF RIGHT TO CANCEL...*

You are entering into a transaction that will result in a mortgage on your home. You have a legal right under federal law to cancel this transaction, without cost, within *THREE (3) BUSINESS DAYS* from whichever of the following events occurs last:

(1) The date of the transaction, which is December 15, 1994; or

(2) The date you received your truth in lending disclosures; or

(3) The date you received this notice of your right to cancel....

*HOW TO CANCEL*

If you decide to cancel this transaction, you may do so by notifying us in writing at:

AVCO FINANCIAL SERVICES

7164-D E. FURNACE BRANCH RD

GLEN BURNIE, MD 21060

You may use any written statement that is signed and dated by you and states your intention to cancel and/or you may use this notice by dating and signing below. Keep one copy on [sic] this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than *MIDNIGHT of DECEMBER 19, 1994* (or *MIDNIGHT of the THIRD BUSINESS DAY* following the latest of the three events listed above). If you send or deliver your written notice to cancel

---

4. *See Morris v. Lomas and Nettleton Co.*, 708 F.Supp. 1198 (D.Kan.1989).

some other way, it must be delivered to the above address no later than that time.

*I WISH TO CANCEL*

---

SIGNATURE

I acknowledge receipt of two copies of *NOTICE OF RIGHT TO CANCEL* and one copy of Federal Truth in Lending Disclosure Statement, all given by lend-

---

DATE

er in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96–221).

---

GLADYS L. WIGGINS        DATE

---

        DATE

---

DATE

---

DATE

By signing below, I certify that the rescission period has expired, that & I/WE & have not chosen to cancel the transac-

tion identified above and that & I/WE & do not want to cancel it now.

---

GLADYS L. WIGGINS        DATE

---

        DATE

---

DATE

---

DATE

*Id.*[5] Plaintiff signed both the signature line acknowledging receipt of the notice of her right to rescind and the signature line certifying her decision not to rescind.

Plaintiff contends that the inclusion of the notice informing the borrower that she has three business days to cancel, along with her certification that the three business days have expired and she has chosen not to cancel, is objectively confusing, and therefore in violation of TILA's requirement of clear and conspicuous notice.

While no court in this jurisdiction has ever addressed the requirements of TILA under the circumstances raised by the instant case, a number of other courts have decided similar cases, albeit with very dif-

ferent outcomes. Plaintiff cites *Rodash v. AIB Mortgage Co.,* 16 F.3d 1142 (11th Cir.1994), as support for her right to rescind her loan.

In *Rodash,* the United States Court of Appeals for the Eleventh Circuit faced a situation nearly identical to the one posed in the instant case. There, the plaintiff obtained a home equity mortgage on her principal residence. At the closing, she received, among a number of disclosure documents, a single-page document entitled "Acknowledgment of Receipt of Notice of Right to Cancel and Election not to Cancel". *Id.* at 1144. Plaintiff signed the Election not to Cancel on the same day as closing, and the loan proceeds were then distributed several days later.

---

**5.** Defendant refers extensively to the regulations promulgated under TILA, and the model forms provided by the Federal Reserve System which presumably comply with the requirements of TILA. While the document provided to Plaintiff does follow very closely the model form set forth in the regulations at 12

C.F.R. § 226, App. G (1999), the model form does not contain the disputed provision permitting a borrower to elect not to rescind. It is *exactly* that portion of the form which engendered the present lawsuit. Therefore, Defendant's line of argumentation adds little to the Court's analysis.

The Eleventh Circuit, upon review of the one-page document, concluded that the boilerplate provision certifying a borrower's election not to cancel precluded clear and conspicuous notice under the terms of TILA, thereby extending the plaintiff's time period for rescission to three years. In reaching that conclusion, the Court of Appeals reasoned that "the appellee's proffering of the Election Not to Cancel during the transaction would confuse any reasonable borrower because it implies, incorrectly, that waiver is generally possible within the three-day cooling off period." *Id.* at 1146. Furthermore, the Court of Appeals believed that by having the borrower sign the Election Not to Cancel on the same day of closing, the Defendant suggested improperly to the borrower that she had foreclosed her right of rescission. The Court of Appeals further concluded that the practice of providing both the notice of right to cancel and the election not to cancel at the same time was inherently confusing, given the fact that most reasonable borrowers would believe that they needed to sign the election not to cancel in order to consummate the mortgage transaction. *Id.*

■ The Court finds the Eleventh Circuit's reasoning in *Rodash* persuasive in light of the facts in this case.[6] Upon careful review of the notice document provided to Plaintiff, it is readily apparent that the language is so confusing as to preclude clear and conspicuous notice as required by TILA.

First and foremost, the language of the election not to rescind is both objectively false and internally inconsistent. While the first two sections of the one-page notice document explicitly state the time period and procedure for rescission, the disputed provision states on the very same page that the lender "certif[ies] that the rescission period *has expired.*" Pl.'s Ex.

3A; Def.'s Ex. L (emphasis added). Such a statement is simply false and directly in conflict with the language stating "[y]ou have a legal right under federal law to cancel this transaction, without cost, within *THREE (3) BUSINESS DAYS....*" A prospective borrower signing the document at closing is bound to be confused about whether her right of rescission has actually passed.

Second, the very language of the election not to rescind tells the average borrower that her "cooling off" period "has expired" and that she may no longer rescind the transaction. This is clearly contradictory to the rights guaranteed by TILA.

Third, the disputed provision is objectively confusing because, given its placement on the same page as the notice of rescission rights, the average borrower could reasonably believe that she must immediately sign the election not to rescind in order to consummate the transaction. It is undisputed that a prospective borrower *must* sign at closing the portion of the document acknowledging receipt of the entire document. The proximity of the election not to rescind implies that it too must be signed before the transaction may be processed.

Finally, permitting the borrower to sign a provision acknowledging the passage of the "cooling off" period essentially constitutes waiver of the right to rescind. The regulations promulgated pursuant to TILA state:

> The consumer may modify or waive the right to rescind if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to re-

---

6. The Court is well aware that the Eleventh Circuit appears to have limited *Rodash* in the later case of *Smith v. Highland Bank,* 108 F.3d 1325 (11th Cir.1997). While the opinions of a Court of Appeals other than our own are certainly worthy of respect, this Court is not bound by them. This Court does not find the reasoning in *Smith* to be compelling.

scind, and bears the signature of all the consumers entitled to rescind. *Printed forms for this purpose are prohibited....*

12 C.F.R. § 226.23(e)(1) (1999).[7] Here, Plaintiff faced no personal financial emergency which necessitated a waiver of the rescission right. By having Plaintiff waive her right to rescission on a pre-printed form before the "cooling off" period had expired, Defendant violated the dictates of TILA.

Because the election not to rescind is inherently confusing in both its language and its placement on the notice document as a whole, Plaintiff did not receive clear and conspicuous notice of her right to rescind. Defendant's violation of TILA therefore extends the period of Plaintiff's right to rescind to three years. Accordingly, Plaintiff's Motion for Partial Summary Judgment is **granted.**

■ Defendant argues in the alternative that Plaintiff is time-barred from recovering statutory damages on her TILA claim. On this argument, Defendant prevails. TILA provides that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year from the date of the occurrence of the violation.*" 15 U.S.C. § 1640(e) (1999). This district court has previously held that, for the purposes of determining statutory damages, "violation of TILA occurs no later than the date of settlement of any loan for which required disclosures have not been made." *Lawson v. Nationwide Mortgage Corp.,* 628 F.Supp. 804, 807 (D.D.C.1986).

Plaintiff concedes that the statute of limitations for TILA is one year where the borrower's claim rests on failure to make material disclosures. Pl.'s Opp. to AVCO's Mot. for Summ. J. at 11. She nevertheless argues that her TILA claim for statutory damages is not time-barred because the claim rests on Defendant's failure to honor her rescission request.

Although no court in this jurisdiction has ever ruled on that specific issue, other courts have considered the question. In *Rowland v. Magna Millikin Bank of Decatur,* 812 F.Supp. 875 (C.D.Ill.1992), several borrowers sought rescission of an installment contract for failure to make necessary disclosures under TILA. The district court there, upon reviewing the disclosure documents provided to borrowers, concluded that the lender had failed to make material disclosures, thereby extending the period of rescission to three years.

With respect to the question of statutory damages, however, the district court reasoned that the violation of TILA occurred at the date of *settlement,* when the lender failed to make the necessary disclosures. The violation did *not* occur, as the borrowers argued, at the time when the lender failed to respond to their rescission request. Therefore, while the borrowers retained their right to rescind for a three-year period following settlement, they were required to bring suit for statutory damages within one year of settlement. *Id.* at 881.

The reasoning in *Rowland* is equally applicable to the instant case. Here, Plaintiff's right of rescission is extended because Defendant failed to make necessary disclosures, thereby denying Plaintiff clear and conspicuous notice of her right to rescind. The failure to provide Plaintiff with adequate notice occurred on the date of settlement, December 15, 1994, not at the later date of Defendant's failure to honor the rescission request. Therefore, while Plaintiff retained her right to rescind the transaction until three years following settlement, she was required to bring any claim for statutory damages within one year of settlement. Accordingly, Plaintiff's claim for statutory damages is dis-

7. *See Mills v. Home Equity Group, Inc.,* 871 F.Supp. 1482, 1486 (D.D.C.1994) (holding that failure to comply with the written waiver requirement constitutes a violation of TILA).

missed and Defendant's Motion for Summary Judgment is **granted in part.**

## B. DCCPPA Claims

Defendant further seeks summary judgment on Count IV of Plaintiff's Complaint, alleging violations of the District of Columbia Consumer Protection Procedures Act ("DCCPPA").[8] In particular, Plaintiff argues that Defendant violated the DCCPPA by: 1) failing to provide in the Note that the loan was structured with a balloon payment; 2) failing to provide a Good Faith Estimate of charges; 3) failing to provide Plaintiff with disclosures regarding the material terms of the loan and settlement charges; and 4) disbursing the proceeds of the loan jointly to Plaintiff and Arctic.

■ The DCCPPA states in relevant part:

It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

(a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

(b) represent that the person has a sponsorship, approval, status, affilia-tion, certification, or connection that the person does not have...

(d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead...

(t) use deceptive representations or designations of geographic origin in connection with goods and services....

D.C.C. §§ 28–3904(a), (b), (d), (e), (f), and (t).[9]

■ Defendant argues as a preliminary matter that the DCCPPA does not apply to the disputed transaction because the transaction took place in Maryland, rather than the District of Columbia. Our Court of Appeals rejected exactly that argument in *Williams v. First Gov't Mortgage and Investors Corp.,* 176 F.3d 497, 1999 WL 162596 (D.C.Cir.1999). Although the Court of Appeals approached the question from a diversity jurisdiction/choice of law approach, the reasoning from *Williams* nevertheless applies to this action, which was removed on federal jurisdiction grounds from the Superior Court for the District of Columbia pursuant to 28 U.S.C. § 1441.[10]

---

**8.** Within her Complaint, Plaintiff makes reference to the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, *et seq.* Upon clarification in her Opposition to Defendant's Motion for Summary Judgment, however, Plaintiff concedes that she does not bring a claim under RESPA, but rather, refers to the standard under RESPA as guidance for this Court's review.

**9.** The District of Columbia Court of Appeals has determined that plaintiffs bear the burden of proving by clear and convincing evidence claims of intentional misrepresentation under the DCCPPA. *Osbourne v. Capital City Mortgage Corp.,* 727 A.2d 322, 326 (D.C.1999).

**10.** The Court of Appeals, examining the situation where a Maryland corporation extended a mortgage to a District of Columbia resident, concluded that while Maryland had an inter-est in the case, "the District of Columbia likewise has an interest in protecting its citizens from predatory loan practices...." *Id.* at *2. Quoting then from the lower court opinion, the Court of Appeals noted that " 'by issuing a loan to a D.C. resident and taking his D.C. home as collateral,' First Government 'availed [itself] of, and subjected [itself] to, the consumer protection laws of the District of Columbia.' " *Id.* (citation omitted). Given the extensive contact with the District of Columbia, the Court of Appeals recognized that " '[i]f the CPPA did not apply to cases like this one... loan and mortgage companies could... evade D.C. consumer protection laws by locating themselves just across the District line from the D.C. citizens they seek as customers.' " *Id.* (citation omitted).

Turning then to the merits of Plaintiff's claims under the DCCPPA, Plaintiff argues initially that Defendant's failure to provide in the terms of the Note that Plaintiff would be required to make a balloon payment at the end of a ten-year period constitutes a violation of the DCCPPA. Defendant concedes that the terms of the balloon payment were inadvertently omitted from the Note. Rather, Defendant argues that Plaintiff received adequate notice of the balloon payment in the numerous disclosure documents which were provided to her prior to consummation of the loan transaction.[11]

█ In support of its argument, Defendant has submitted a number of financial disclosure statements and a Good Faith Estimate of charges, each bearing Plaintiff's signature. Plaintiff in turn argues that despite the presence of her signature, she never received the disclosure documents and the good faith estimates which Defendant has submitted as exhibits. Supported by her own attestations in an affidavit, Plaintiff contends that such a factual dispute precludes summary judgment. Pl.'s Ex. 4.

█ This district court has previously ruled that an individual's signature on a disclosure document gives rise to a rebuttable presumption that it was in fact delivered to her. *Williams v. First Gov't Mortgage and Investors Corp.*, 974 F.Supp. 17, 21 (D.D.C.1997). Plaintiff's sworn affidavit stating that "she did not receive any papers disclosing the terms of the loan or a Good Faith Estimate of settlement charges" is sufficient, however, to rebut the presumption of receipt. Pl.'s

Ex. 4. While additional supporting evidence would be preferable, given the nature of the factual dispute here, it is difficult to envision any other type of evidence Plaintiff could have assembled in support of her assertion. This is a credibility issue which must be resolved, after cross-examination, by a jury. The Court therefore concludes that Plaintiff has raised genuine issues of material fact that are in dispute. Summary judgment must therefore be **denied.**[12]

Furthermore, with respect to Plaintiff's allegation that Defendant violated the DCCPPA by issuing two checks jointly to Plaintiff and Arctic, Defendant has chosen not to argue the issue in its Motion for Summary Judgment. Defendant therefore concedes that genuine issues of material fact exist, and summary judgment is accordingly **denied.**

With respect to the question of punitive damages, Defendant concedes that punitive damages are available for violations of DCCPPA, yet argues that Plaintiff has presented no facts supporting such an award. AVCO's Reply to Pl.'s Opp. to AVCO's Mot. for Summ. J. at 9. Whether or not Defendant's conduct rises to the level of fraud, ill will, recklessness, or willful disregard of Plaintiff's rights is a disputed factual question. *See In re Davis*, 172 B.R. 437, 454 (1994) (stating the standard for punitive damages). The Court will defer ruling on the issue of punitive damages until the case has been presented fully to a jury.

## IV. Conclusion

Plaintiff brought this action against AVCO and other defendants alleging viola-

---

11. Defendant cites to *Veale*, which holds in part that while errors in a note are generally construed against the lender, typographical errors in a note do not necessarily rise to the level of a TILA action, especially where the disclosure statements are correct. 85 F.3d at 579.

12. Plaintiff further asserts that the inclusion of a balloon payment structure was unconscionable as a matter of law, and therefore constituted a violation of the DCCPPA. While

parties dispute extensively the standard for determining unconscionability, the Defendant relying upon a common law standard and the Plaintiff relying on language in the statute, the Court need not resolve that dispute. The evidence before the Court is such that a reasonable jury could in fact conclude that Plaintiff was coerced or pressured to consummate the transaction. Under either standard, Plaintiff has raised sufficient factual disputes to warrant submission to the jury.

tions of TILA and the DCCPPA. Plaintiff has clearly established that the Notice form provided by Defendant does not provide clear and conspicuous notice of her rescission rights as required by TILA. Plaintiff's Motion for Partial Summary Judgment is therefore **granted.**

Because she filed her claim just shy of three years from the date of settlement, however, Plaintiff's claim for statutory damages under TILA is time-barred. Therefore, Defendant's Motion for Summary Judgment is **granted in part,** and the statutory damages portion of Plaintiff's claim is dismissed.

With respect to her claims under the DCCPPA, Plaintiff has raised a number of factual disputes such that summary judgment is inappropriate. Accordingly, Defendant's Motion for Summary Judgment is **denied in part.**