DECISION AND JUDGMENT ENTRY
This is an appeal from a Lawrence County Common Pleas Court judgment, after a trial to the court, in favor of ContiMortgage Corporation, plaintiff below and appellee herein, on its foreclosure claim against Nancy Delawder, defendant below and appellant herein.
The following error is assigned for our review:[1]
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN REFUSING TO FIND THAT MS. DELAWDER AND MS. RUNYON HAD TIMELY RESCINDED THE LOAN TRANSACTION DUE TO MS. PARSON'S FAILURE TO COMPLY WITH THE NOTICE REQUIREMENTS OF REG. Z § 226.23(b)."
Our review of the record reveals the following facts pertinent to this appeal.[2] On June 17, 1997, appellant and her mother, Bertha Runyon, borrowed money from Bankers First Mortgage Co., Inc. (hereinafter "Bankers") to refinance a previous mortgage and to consolidate some bills.[3] In exchange, they executed and delivered to Bankers their $41,600 promissory note to be paid in monthly installments over twenty years together with interest at the rate of ten and one half percent (10.50%) per annum. As security for the note, appellant and her mother gave a mortgage on their home located at 380 Private Road in Ironton, Ohio. The mortgage was filed and became a first and best lien on the premises. Bankers later assigned the note and mortgage to ContiMortgage Corporation, appellee herein.
Appellant and her mother made payments for several months, but then defaulted in the Spring of 1998. Appellee commenced the instant action on January 6, 1999 and sought judgment on the note and the foreclosure of the mortgage. Appellant filed an answer and denied liability and filed a two part counterclaim: (1) the first part asserted that the loan was made in violation of the federal Truth in Lending Act (TILA) set forth at Section 1635, Title 15, U.S. Code, and, as a result of such alleged violation(s), she wished to rescind the transaction; and (2) the second part asserted that the loan violated the Consumer Sales Practices Act (CSPA) codified in R.C. Chapter 1345. Appellant asked the court to dismiss the claims against her and that she be given "all relief that she is entitled to under law and equity." Appellee denied any liability on the counterclaim.
On May 9, 2000, the matter came on for a bench trial. Appellant conceded default on the loan. The parties also stipulated that appellant never sought to "rescind the loan," or to complain of deficiency in the closing of the loan, until after the commencement of foreclosure. Further, the parties agreed that appellant "asserted rescission by way of counterclaim filed in response to [the] complaint." The matter was thereafter heard on the narrow issue of whether the loan was made in violation of TILA. In particular, the parties focused their attention on a "Notice of Right to Cancel" which was given to appellant and to her mother at closing. The notice provided, inter alia, as follows:
 "I/We acknowledge receipt of two copies of NOTICE OF RIGHT TO CANCEL and one copy of Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).
 [s. Nancy B. Delawder] 6/17/97 [s. Bertha Runyon] 6/17/97
NANCY B. DELAWDER DATE BERTHA RUNYON DATE
* * *
 By signing below, I/we certify that the rescission period has expired, that I/we have not chosen to cancel the transaction identified above and that I/we do not want to cancel it now.
 [s. Nancy B. Delawder] 6/23/97 [s. Bertha Runyon] 6/23/97
NANCY B. DELAWDER DATE BERTHA RUNYON DATE"
Appellant testified that she and her mother received just one copy of this notice between them. Further, with respect to the bottom signature line that denotes a waiver of the right to cancel, appellant stated that this was post-dated "6/23/97," but was actually presented to, and signed by, them on the closing date (i.e. June 17, 1997). Thomas Klein, attorney and owner of the title agency that closed the refinance, testified that standard procedure required two (2) copies of this notice in "closing packages" and that the personnel who conducted this particular closing were very professional and would have followed that requirement.[4] The witness did not address the contention, however, that the waiver of the right to cancel had been post-dated and signed at the closing rather than six days later as noted on the document.
On June 1, 1999, the trial court issued extensive findings of fact and conclusions of law. After the court summarized the testimony, and found that it was all "generally credible," the court held that the notice of right to cancel was post-dated to the date of closing and was signed by appellant and her mother at the closing rather than the date noted thereon. The court also found that it is impossible to determine the precise number of copies of the notice which had been given to the borrowers at the closing.
Regardless of any errors, however, the trial court determined that appellant and her mother were "fully informed of their right to rescind," were not confused by the events of the closing and that any defects in the notice of right to cancel were "nothing more than mere technical . . . violations of TILA, which caused no damage, confusion, or hardship." The court adopted the reasoning of Smith v. Highland Bank (C.A.11 1997),108 F.3d 1325, 1327, that TILA did not require perfect notice, but rather "clear and conspicuous notice of rescission rights." Having concluded, in essence, that such notice had been provided to appellant and to her mother, the court found no merit in the first portion of the counterclaim.[5] The trial court also held that the note and mortgage were in default and, in the absence of any viable defense, appellee was entitled to the foreclosure of its security interest.
Our analysis begins by precisely delineating the issue posited for review. TILA grants a right of rescission on any mortgage loan transaction for which the borrower uses her principle dwelling as security. Section 1635(a), Title 15, U.S.Code. This right of rescission generally extends to midnight of the third business day following consummation of the transaction. Id.; also see Beach v. Great WesternBank (Fla.App. 1996), 670 So.2d 986, 988; Rudisell v. Fifth Third Bank
(C.A.6 1980), 622 F.3d 243, 246-247. Federal regulations require that borrowers be given notice of this right. Section 226.23(b)(1), Title 12, C.F.R.[6] The notice must be listed on a separate document and must "clearly and conspicuously disclose" inter alia the right to rescind the transaction and instructions as to how to exercise that right. Id. at (b)(1)(ii)-(iii). Additionally, the borrower must be given two copies of the notice. Id. at (b)(1); also see Rowland v. Novus Financial Corp. (D.Ha. 1996) 949 F. Supp. 1447, 1452. A failure to properly comply with the notice requirements will extend the right of rescission up to three years. See Section 226.23(a)(3), Title 12, C.F.R.; also see Taylor v.Domestic Remodeling, Inc. (C.A.5 1996), 97 F.3d 96, 98; Jackson v. Grant
(C.A.9 1989), 890 F.2d 118, 122; Moore v. Flagstar Bank (E.D.Va. 1997),6 F. Supp.2d 496, 504.
The mortgage loan transaction at issue herein was consummated on June 17, 1997. Appellant contends that the lender (through the title company as its agent) did not comply with the Section 1635, Title 15, U.S. Code notice requirements and the accompanying regulations. Specifically, appellant claims that the lender gave appellant and her mother one copy of the notice of right to cancel between them and that they were instructed to execute the waiver of the notice at the closing rather than three days later. Appellant thus asserts that these violations gave her three additional years in which to exercise her right of rescission and that she ultimately decided to rescind the loan once appellee brought the foreclosure action.[7]
The trial court agreed with appellant that she and her mother did in fact, execute the waiver of the right of rescission at the closing (rather than three days later). The court could not determine, however, whether they had been given the requisite number of copies of that notice. Even if they had not, the court concluded, both of these problems constituted mere technical violations of TILA and did not extend the right of rescission for three years. Thus, the court held that appellant could not rescind the loan as part of her counterclaim and that the foreclosure could proceed.
Appellant argues in her assignment of error that the trial court erred by holding that the lender's failure to strictly comply with TILA was a mere technical mistake. Instead, she contends that those errors were material and extended her right of rescission for three years. For the following reasons, we disagree.
Initially we note that the TILA does not require perfect notice; rather, it requires a clear and conspicuous notice of rescission rights.See Smith, supra at 1327; Veal v. Citibank, F.S.B. (C.A.11 1996),85 F.3d 577, 580; In re Porter (C.A.3 1992), 961 F.2d 1066, 1076. Although Bankers may have only provided appellant and her mother with one copy of the "Notice of Right to Cancel" between them in violation of Section 226.23(b)(1), Title 12, C.F.R. that notice nevertheless "clearly and conspicuously" indicated that they possessed a right of rescission. Appellant also confirmed during the trial that the closing officer had informed them that they had three days to rescind or to cancel the transaction. Obviously, appellant was informed of and knew of her legal rights regarding rescission. We believe that these facts and circumstances sufficiently satisfy the TILA statutory requirements and, in our opinion, meet the spirit if not the precise letter of the accompanying regulations.
We also note that nothing in the statute or administrative regulations expressly prohibit the signing of a post-dated waiver of the right of rescission.[8] That prohibition has arisen from case law interpreting these provisions. In Rodash v. AIB Mortgage Co. (C.A.11 1994),16 F.3d 1142, 1146-1147, the Court held that having a borrower sign an "Election Not to Cancel" at the time of closing could confuse the borrower about her rights and thereby violate TILA's notice provisions. The same Circuit Court of Appeals later retracted the Rodash decision and limited it to the particular facts of that case. See Smith, supra at 1327. The Court noted that liability under TILA should not be imposed for "inartfully drawn forms" and that the law required only clear and conspicuous notice of rescission rights. Id.[9]
We believe that Morris v. Lomas and Nettleton Co. (D.Kan. 1989),708 F. Supp. 1198, is the case most analogous to the instant case. InMorris, the borrowers signed a waiver of right of rescission at the closing and later argued that this violated the TILA. The District Court rejected that argument as follows:
 "Finally, we shall consider the plaintiffs' argument that their right to rescission remains alive because they were induced to waive their rescission rights without declaring a bona fide emergency. * * *
* * *
 The facts do not support the plaintiffs' contention that the defendant improperly induced them to waive their right of rescission. The facts clearly indicate that the plaintiffs never waived or agreed to waive their right of rescission. The plaintiffs never sought such a waiver and the defendant never agreed to such a waiver. * * * The purpose of a waiver would be to allow the creditor to disburse the loan proceeds prior to the expiration of the three-day period. Here, the loan proceeds were disbursed after the expiration of the three-day period. The purpose of signing the election not to rescind portion of the form prior to the expiration of the three days was to allow the defendant to disburse the funds quickly after the expiration of the three-day period. Plaintiffs still retained their right to rescind during the three-day period and could have exercised it. Plaintiffs chose not to and the defendant was thereafter allowed to disburse the loan proceeds immediately after the conclusion of the three-day period because the defendant was `reasonably satisfied' that the plaintiffs did not wish to rescind the transaction since the defendant had the signed statement that the plaintiffs had not exercised their right of rescission." Id. at 1205-1206. (Emphasis added.)
We come to the same conclusion. We find no evidence to suggest that by signing the post-dated waiver, appellant and her mother actually waived their right of rescission. If this was the case, the lender would have immediately disbursed the loan proceeds. Instead, as the parties stipulated below, the funds were not disbursed until "June 23, 1997, after the expiration of the Truth-in-Lending rescission period." Furthermore, we find no evidence to suggest that appellant believed she had waived her rights or that the lender believed that it had extracted such a waiver. The totality of the circumstances in this case, as inMorris, suggest that appellant and her mother signed the post-dated form simply to facilitate faster disbursement after the expiration of the three day period and that, had they chosen to do so, appellant could have exercised her right of rescission. However, as appellant repeatedly testified below, she did not want to rescind the transaction (at least not until foreclosure was commenced).[10]
In sum, we agree with the trial court's conclusion that any TILA mistakes in the instant case constitute technical (if not hyper-technical) mistakes and do not violate the spirit of the law. We therefore find no error in the court's judgment that appellant could not rescind the mortgage loan. Our holding is supported by several other factors as well. First, whatever mistakes that may have occurred in the loan closing, neither appellant nor her mother suffered any apparent prejudice. We find no evidence to show that appellant was damaged or that appellant wanted to rescind the loan. Only after appellant was in default and foreclosure proceedings had begun (approximately eighteen months after the loan closing) did appellant express her desire to rescind the loan.
Second, we find nothing in the record to suggest that appellant and her mother were the victims of any overreaching. Our review of the mortgage documents introduced as exhibits at trial and those documents attached to the original papers do not reveal the absence of any unconscionable loan terms. At this juncture we deem it important to note that the purpose of the TILA is to assure the meaningful disclosure of credit terms so that the consumer will be able to: (1) compare the various credit terms available; (2) to avoid the uninformed use of credit; and (3) to protect the consumer against inaccurate and unfair credit billing and credit card practices. Section 1601(a), Title 12, U.S.Code; also see Begala v. PNCBank, Ohio, N.A. (C.A.6 1998), 163 F.3d 948, 950; McGee v. Kerr-HickmanChrysler Plymouth, Inc. (C.A.7 1996), 93 F.3d 380, 383; Allen v.Beneficial Finance Co. (C.A.7 1976), 531 F.2d 797, 800. We believe that the intent behind the TILA has been satisfied in this case. We are mindful that the administrative requirements of TILA have grown more complex and burdensome for the financial industry and that technical mistakes have become increasingly likely regardless of how conscientiously institutions may attempt to comply with the act. More than two decades ago, when debating the Depository Institutions Deregulation and Monetary Control Act of 1980, the United States Senate referred to TILA as follows:
 "Enacted in 1968, the Truth-in-Lending Act is the first consumer credit law passed by the Congress and remains today one of the Nation's most important consumer protection laws. * * *
* * *
 Despite the act's clear successes, however, there is a growing belief among consumers and creditors alike that the act could be substantially improved. There is considerable evidence, for example, that disclosure forms given consumers are too lengthy and difficult to understand. Creditors, on the other hand, have encountered increasing difficulty in keeping current with a steady stream of administrative interpretations and amendments, as well as highly technical judicial decisions. There is also evidence that many creditors have sincerely tried to comply with the act but, due to its increasing complexity and frequent changes, have nonetheless found themselves in violation and subject to litigation." (Emphasis added.)
S. REP. No. 368, 96th Cong., reprinted in 1980 U.S. CODE CONG. 
AD. NEWS 236, 251-252.
These concerns became even more pronounced when Congress began debate on the "Truth in Lending Class Action Relief Act of 1995" introduced in response to the previously discussed Rodash decision. A member of the House of Representatives described this bill and the problems it was meant to address on the floor of the house as follows:
 "This bill addresses certain changes to the Truth in Lending Act due to the flood of class action lawsuits that followed the decision in Rodash versus AIB Mortgage Co. * * * And because the courts have held that a loan is rescindable under the Truth in Lending Act for even minor disclosure variance, the borrower has the right to rescind up to 3 years from consummation of the loan.
 Hence, numerous class action lawsuits have been filed in the wake of the Rodash decision, which exposes the mortgage industry to extraordinary liability that may threaten the solvency of the industry. Here let me stress that this issue is not a matter of nondisclosure or industry efforts to mischievously mislead borrowers. * * * The problem is that an honest mistake of no consequence to any of the parties involved has become the subject of the shark instincts of the plaintiff's bar.
* * *
 * * * But, I know of few instances of litigious [sic] which reflect more the unnecessarily litigious nature of America at this time. Sometimes a litigant may be right on a small point, but desperately wrong in the big perspective. That is the case here. The bar that has brought this class action effort should be chastised, not rewarded. Out of common sense, this Congress must act." (Emphasis added.)
141 CONG. REC. 26574-26575 (statement of Rep. Leach). Another representative described the proposed amendments as bringing "an end to the massive potential liability facing the mortgage industry as a result of extraordinary penalties under the Truth in Lending Act . . . fortechnical errors." (Emphasis added.) Id. at 26575 (statement of Rep. McCollum). Similar comments were made in the United States Senate as shown in the following excerpt:
 "This bill will give Congress time to address a U.S. Court of Appeals decision, Rodash versus AIB Mortgage Co., which allowed a borrower to rescind a mortgage based on a technical violation of the disclosure and notice requirements provided for in the Truth in Lending Act. * * *
 The Truth in Lending Act is a complex law with almost no room for forgiveness if an honest technical error is made by the lender. * * * These laws encourage cookie-cutter lending in order to avoid mistakes. Consumers are then hurt by higher rates and less lending.
 * * * I do not believe that the authors of the Truth in Lending Act intended to stifle creative lending and punish the mortgage industry for technical violations of its complex disclosure provisions. If the courts were to permit borrowers to rescind loans as part of class action lawsuits, the impact could be felt from the financial institutions and the secondary markets all the way to the Federal deposit insurance funds which are ultimately backed by the U.S. taxpayer.
 In Florida, we have seen ads with banner headlines, `collect money back from your lender,' encouraging borrowers to rescind their loan. There is no mention of harm done to the consumer in the ads. * * * In the end, the biggest beneficiaries of this wave of . . . suits will be the lawyers. Consumers will be left with small settlements, higher costs, and fewer choices of mortgage lenders." (Emphasis added.) Id. at 11171 (statement of Sen. Mack).
These excerpts clearly and inexorably show the growing reticence on the part of Congress to have TILA applied in a rote and technical fashion which penalizes lenders in instances in which no harm to borrowers has occurred. The judiciary has begun to take heed of these problems as well. Thus, while federal law generally requires strict compliance with TILA, some courts have noted that strict compliance does not necessarily mean "punctilious" compliance if, with only minor deviations, substantial and clear disclosure of the fact or information demanded by the applicable statute or regulation occurs. See Hawaii Community FederalCredit Union v. Keka (Ha. 2000), 11 P.3d 1, 13; also see Smith v.Chapman (C.A.5 1980), 614 F.2d 968, 972. Courts are beginning to recognize that borrowers should not be permitted to use the TILA as an instrument of harassment or oppression against the lending industry. Seee.g. Greisz v. Household Bank (N.D.Ill. 1998), 8 F. Supp.2d 1031, 1036. Rather, the TILA provisions should be enforced with common sense and be applied without losing sight of the legislative purpose behind its enactment. Mackey v. Household Bank, F.S.B. (Fla.App. 1996),677 So.2d 1295, 1298. To do otherwise generates disrespect for the law by creating a morass of technical regulations with no connection to the human experience. Id.
Given these principles, and when we consider the totality of the facts and circumstances in this particular case, we conclude that both the legislative purpose and the spirit of the TILA have been satisfied. Appellant received notice of her right to rescind. No indication exists that appellant suffered any damage or prejudice as a result of the lender's actions or the title company that closed the transaction. Lastly, we again note that appellant had no desire to rescind the mortgage until after she had defaulted on the loan and the case proceeded to foreclosure.
For all these reasons, we find no merit in appellant's assignment of error. Therefore, we overrule appellant's assignment of error and affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ________________________________________ Peter B. Abele, Presiding Judge.
Kline, J. Evans, J. Concur in Judgment Opinion.
[1] Appellant's brief does not contain a separate "statement of the assignments of error" as required by App.R. 16(A)(3), see Whiteside, Ohio Appellate Practice (1999 Ed.) 93, § T5.13, and therefore we have extracted this assignment of error from the body of her argument.
[2] A good portion of our factual recitation is taken from the extensive "stipulations of evidence" filed by the parties below.
[3] Ms. Runyon has since passed away.
[4] Mr. Klein conceded that he had no personal knowledge of this particular transaction. He also stated that the employees who closed the loan were no longer available to testify.
[5] The parties previously stipulated that appellee is a "financial institution" as that term is defined in R.C. 5725.01(A). The court thus found that the CSPA did not apply to this transaction, see R.C. 1345.01(A), and found no merit to the second portion of appellant's counterclaim.
[6] These regulations, collectively known as "Regulation Z," are issued by the Board of Governors of the Federal Reserve System to implement TILA. Section 226.1(a), Title 12, C.F.R.
[7] Appellant agreed during her closing argument that as a result of her exercising her right of rescission, she was further entitled to statutory damages, plus the cancellation of the mortgage. Appellant asserted that the bank was not entitled to recoup any of the funds originally lent.
[8] The regulations only appear to speak to a waiver of right to rescind with respect to meeting financial emergencies. See Section 226.23(e)(1), Title 12, C.F.R. However, we are not dealing so much with an actual waiver in this case as we are with the signing of a post-dated waiver form to take effect after the three day right of rescission period has run its course.
[9] It is admittedly unclear from the facts in Smith whether the borrower actually signed the post-dated "right to cancel" at the time of closing. We note, however, that the court essentially approved a notice form similar to the one used here. See 108 F.3d at 1328 (appendix).
[10] We acknowledge that authority to the contrary exists and that other decisions in addition to Rodash have concluded that the signing of a post-dated waiver of the right to rescind a loan transaction violates the TILA. See e.g. Wiggins v. Avco Financial Services (D.C. 1999),62 F. Supp.2d 90, 96-97; Mount v. LaSalle Bank Lake View (N.D.Ill. 1996), 926 F. Supp. 759, 765; Curry v. Fidelity Consumer Discount Co. (E.D.Pa. 1987), 656 F. Supp. 1129, 1132. Nevertheless, we believe the facts and reasoning in Morris are more persuasive when we consider the cause sub judice.