# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2544

_____

Rand Corporation,

    Plaintiff - Appellee,

     v.

Yer Song Moua; Manisy Moua;
John Doe; Mary Row,

    Defendants - Appellants.

Appeal from the United States
District Court for the District of
Minnesota.

_____

Submitted: March 14, 2008
Filed: March 20, 2009

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

  This appeal involves a dispute between a lender, Rand Corporation, and two borrowers, Yer Song Moua and Manisy Moua, over the right to rescind a loan secured by a mortgage on their home. The core issue is whether the Mouas had a three-year – rather than three-day – period in which to rescind the transaction. They contend the normal three-day rescission period was extended to three years by Rand's 1) failure to make material disclosures required by the Truth in Lending Act (TILA), 15 U.S.C. § 1635(a), and the Home Ownership and Equity Protection Act (HOEPA), 15 U.S.C. § 1639(b), 2) failure to provide clear and conspicuous notice of TILA's three-day post-transaction right to cancel, and 3) inclusion of a prepayment penalty expressly

prohibited by HOEPA. The district court granted summary judgment in Rand's favor. We reverse and remand for further proceedings.

I

Yer Song Moua and Manisy Moua are husband and wife. For six years, they owned and lived in a house located at 2438 Arlington Avenue East, Maplewood, Minnesota. The Mouas initially obtained a loan for the home from Mortgage Electronic Registration System, Inc. (MERS), but fell behind on loan payments and MERS commenced foreclosure. A sheriff's foreclosure sale occurred on December 2, 2004, subject to a six-month redemption period expiring June 2, 2005.

During the redemption period, the Mouas met Pat Aylward, a realtor, who offered to help them out of foreclosure by obtaining a loan with lower payments. On January 5, 2005, the Mouas met Aylward at a Rand office and applied for a loan with Rand to refinance their existing loan and redeem from the sheriff's foreclosure sale.

On April 22, 2005, the Mouas closed on the loan and secured it with a mortgage on their primary residence. Rand hired Excel Title to conduct the closing. The Mouas executed a promissory note in the amount of $245,000, listing the interest as "13.990% until May 1, 2006 at which time I will pay 14.990% yearly." The amount of monthly payments was listed as "$2,883.55 until June 1, 2006 at which time my payment will increase to $3,272.04" until July 1, 2010.

Rand contends that on April 22, 2005, it provided the Mouas with all required disclosures pursuant to TILA and HOEPA.[1] The Mouas claim they did not get a

_____

[1]Rand argues it also provided disclosures on January 5, 2005. It concedes, however, the terms of the loan changed after those disclosures were made. The record indicates between January 5, 2005, and April 22, 2005, the amount of the loan and monthly payments increased significantly. "After providing the disclosures required

three-day advance HOEPA disclosure from Rand before the April 22, 2005, closing. Before the district court, Rand alleged the Mouas chose to waive the three-day advance disclosure period based upon a bona fide personal financial emergency. It contended that unsuccessful attempts were made earlier in April 2005 to close the loan but the Ramsey County Sheriff failed to timely provide redemption payoffs. According to Rand, "[d]ue to the pending redemption period set to expire in 41 days, the need to redo all loan documents, update all payoffs with other creditors, and the risk of losing loan approval if the closing were rescheduled past April 22, 2005," the Mouas decided on April 21, 2005, to proceed with closing on April 22, 2005.

At the closing, Manisy claims the closer told her to copy a typed statement in her own handwriting. She contends she did not understand the statement and did not know why she was asked to copy it. The typed statement, which Manisy copied in her own handwriting, read:

> We are aware that we are entitled to a 3 day review of the disclosures prior to closing of this transaction. Because we are aware that the county has not been timely in returning the payoff statement on our mortgage and the current foreclosure proceedings we request that this 3 day review period be waived.
>
> We are further aware that we have a 3 day recession [sic] after signing the closing docs to review all the final documents. We feel that this will allow us time to address any concerns or questions.
>
> Please accept our request to waive the 3 day review period.[2]

by [15 U.S.C. § 1639(a)], a creditor may not change the terms of the extension of credit if such changes make the disclosures inaccurate, unless new disclosures are provided that meet the requirements of this section." 15 U.S.C. § 1639(b)(2)(A). Thus, we consider only the disclosures made April 22, 2005.

[2]Rand provided the following instructions to Excel Title:

Additionally, the Mouas were given a Notice of Right to Cancel (Notice) at the closing, which advised them they had until midnight on April 26, 2005, to cancel the transaction. There are two versions of the Notice.[3] On one version, the Mouas signed and dated the section entitled "Receipt," acknowledging they received the Notice. On the other version, the Mouas signed and dated the "Receipt" section as well as a section entitled "Confirmation" which states: "More than 3 business days have elapsed since the date of the new transaction and I/We received this Notice and Truth-In-Lending disclosures with regard to the new transaction. I/We certify that the new transaction has not been rescinded." The Mouas contend they signed the Receipt and Confirmation sections simultaneously. Their assertion is borne out by the fact all the signatures are dated April 22, 2005. Rand does not dispute the Confirmation section was signed before the three-day rescission period expired. Rather, it contends the Mouas were directed to sign it by Excel Title, without authorization or direction from Rand.[4]

After the closing, the Mouas returned home and reviewed the loan documents with their son. The Mouas allege they learned then the new loan payments were much higher than their previous payments, they had waived their right to the 3-day advance HOEPA disclosures, and had forfeited the opportunity to cancel by signing the Confirmation portion of the Notice.

---

"KAREN

    PRIOR TO STARTING THIS CLOSING THE CUSTOMER NEEDS TO MAKE A STATEMENT SIMILAR TO THE FOLLOWING IN THEIR OWN HANDWRITING, SIGN AND DATE:"

[3]The district court order indicates there are four versions of the Notice. The record shows there are only two versions but the Mouas signed two copies of each.

[4]We reject Rand's attempt to avoid responsibility for Excel Title's actions. Even assuming its assertion is true, the obligation to make TILA and HOEPA disclosures rests with the creditor. See 15 U.S.C. § 1631(b).

On December 1, 2005, the Mouas failed to make their monthly loan payment and have not since made any payments. On March 1, 2006, Rand commenced foreclosure. On April 11, 2006, the Mouas sent Rand a letter stating: "We hereby cancel and rescind the mortgage we obtained from Rand Corporation dated April 22, 2005, in the original amount of $245,000." On May 3, 2006, Rand's counsel wrote to the Mouas denying their rescission request on the basis the Mouas had received notice of their rescission rights and chose not to exercise them before they expired on April 26, 2005.

On May 4, 2006, the Mouas' home was sold at a sheriff's sale to Rand for $269,512.07. On November 4, 2006, the redemption period expired without the Mouas exercising their redemption rights, and on January 29, 2007, Rand filed the instant lawsuit against the Mouas. The Mouas failed to appear at an eviction hearing on January 30, 2007, and the court determined Rand was entitled to lawful possession of the property. A move-out date was scheduled for February 23, 2007. On February 22, 2007, the Mouas filed a motion for a temporary restraining order (TRO), which was granted by the district court pending resolution of this action. The move-out was postponed and the Mouas continued to live in the home and made no payments on the loan. See Rand Corp. v. Yer Song Moua, No. 07-510, 2007 WL 1576732 (D. Minn. May 30, 2007).

In addition to moving for a TRO, the Mouas brought a counterclaim against Rand alleging it violated TILA, HOEPA, and the Minnesota Prevention of Consumer Fraud Act (CFA), Minn. Stat. § 325F.69, subd. 1. As relevant to this appeal, the Mouas alleged Rand violated TILA and HOEPA by failing to provide an early warning notice three days in advance of the loan closing, thereby triggering a statutory right to rescind the transaction within a three-year period. The Mouas further alleged the handwritten notice they signed at the closing was ineffective to waive this requirement or, at a minimum, disputed issues of fact exist about whether the statutory requirements for the waiver were present. The Mouas also alleged the Notice of Right

to Cancel did not comply with TILA's requirements and also triggered an extended three-year rescission period. Finally, the Mouas alleged Rand's inclusion of a prepayment penalty was expressly prohibited by HOEPA.

The district court granted Rand's motion for summary judgment. With respect to the claimed failure to provide the three-day advance notice, the district court determined there was no TILA violation because Rand ultimately made the disclosures. With respect to the claimed failure to provide a Notice of Right to Cancel that complied with TILA, the district court determined the Mouas were provided clear and conspicuous notice of their right to cancel in accordance with TILA. The district court's order did not address the Mouas' claim that Rand's inclusion of a prepayment penalty was expressly prohibited by HOEPA, and the Mouas' motion for reconsideration of the issue was denied.[5]

The Mouas now appeal, arguing the failure to provide the three-day advance notice triggered a three-year rescission right, and their purported waiver of the three-day advance notice was insufficient. They further argue the Notice of Right to Cancel did not comply with TILA. Finally, they argue Rand's inclusion of a prepayment penalty violated HOEPA.

II

"We review a grant of summary judgment de novo, applying the same standard as the district court. Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. When ruling on a summary judgment motion, a court must view the evidence in the

---

[5]The district court also dismissed the Moaus claims for damages under TILA and HOEPA as barred by the one-year statute of limitations, and their state law CFA claim. The Mouas have not appealed those dismissals.

light most favorable to the nonmoving party." Sappington v. Skyjack, Inc., 512 F.3d 440, 445 (8th Cir. 2008) (internal quotations and citations omitted).

We first address the Mouas' claim that a three-year right to rescind was triggered by Rand's failure to provide clear and conspicuous notice of TILA's three-day post-transaction right to cancel.

TILA, §§ 1601-1667f, was passed by Congress as a consumer protection act, Mourning v. Family Publications Service, Inc., 411 U.S. 356, 363 (1973), and its provisions, as well as Regulation Z, are remedial legislation, to be construed broadly in favor of consumers, Griffith v. Superior Ford, 577 F.2d 455, 457 (8th Cir. 1978). "[A]lleged violations of TILA are subject to an objective standard of review. Courts have applied such an objective standard regardless of whether the borrower is a trained attorney or simply an individual who had a sudden need for additional funds." Wiggins v. AVCO Fin. Servs., 62 F. Supp. 2d 90, 94 (D.D.C. 1999) (internal citation omitted).

Under TILA, if a loan is secured by a debtor's primary residence, "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms . . . whichever is later." 15 U.S.C. 1635(a). Further, "[t]he creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section." Id. Notice must be provided "on a separate document that identifies the transaction and . . . clearly and conspicuously discloses" the debtor's rights. 12 C.F.R. § 226.23(b)(1). A creditor's failure to comply with these provisions extends the debtor's right to rescind for up to three years following the transaction. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).

Rand argues its Notice of Right to Cancel form clearly and conspicuously advised the Mouas of their rescission rights. Alternatively, it contends any confusion the form may have caused is excused by TILA's safe-harbor provisions for lenders utilizing model forms promulgated by the FRB. See 15 U.S.C. §§ 1604(b) & 1635(h). The Mouas dispute Rand's claim of employing a model form promulgated by the FRB, but do not base their claim on confusion inherent within the form. Rather, they argue Rand's notice to them was confusing because they were required to sign the Receipt and Confirmation sections simultaneously.

As noted above, the Mouas signed two copies each of two similar Notice Of Right To Cancel forms. On the one, they signed the Receipt section, acknowledging they had been advised of their right to cancel the transaction within three business days. The other, identical save for the addition of a Confirmation section, bears the Mouas' signatures under both the Receipt and Confirmation sections. The Confirmation section indicates "[m]ore than 3 business days have elapsed since the date of the new transaction," it acknowledges receipt of the Notice, and by signing it the Mouas "certif[ied] that the new transaction ha[d] not been rescinded." *All* of the signatures are dated "4/22/05." The Mouas argue this inherent contradiction – being directed to certify that the three-day rescission period had passed on the same day the transaction was consummated – caused them to believe they had given up their right to rescind.

To support their claim, the Mouas rely primarily on Rodash v. AIB Mortgage Co., 16 F.3d 1142 (11th Cir. 1994), abrogated in part on other grounds by, Veale v. Citibank, F.S.B., 85 F.3d 577 (11th Cir. 1996). In Rodash, the borrower was presented a Notice of the Right to Cancel form advising her of the right to rescind the transaction within three days. Id. at 1145. On a separate form, contained in a single paragraph, was an acknowledgment indicating the borrower had received the Notice of the Right to Cancel, and an Election Not to Cancel, indicating she had elected not to cancel. Id. Beneath the paragraph was a single signature line, which the borrower

signed on the day the transaction was consummated. Id. On appeal, the Eleventh Circuit concluded "proffering of the Election Not to Cancel during the transaction would confuse any reasonable borrower . . . ." Id. at 1146. Further, "by having [the borrower] sign a certificate of non-rescission on the date of the transaction, the [lender] suggested [the borrower] had foreclosed her right of rescission." Id.

Other courts, under similar circumstances, have reached the same conclusion. In Wiggins, the borrower granted a security interest in her home in return for a home improvement loan. 62 F. Supp. 2d at 92. At the loan closing, the borrower was presented a Notice of Right to Cancel form nearly identical to the form at issue here. Id. at 94-95. As with the Moaus, the borrower simultaneously signed the signature line acknowledging receipt of the notice of right to rescind and the signature line certifying her decision not to rescind. Id. at 95. The Wiggins court found the form "both objectively false and internally inconsistent," because it purported to notify the borrower of her three-day right to rescind, while simultaneously requiring her to certify the rescission period had expired. Id. at 96.

> A prospective borrower signing the document at closing is bound to be confused about whether her right of rescission has actually passed.
>
> [T]he very language of the election not to rescind tells the average borrower that her "cooling off" period "has expired" and that she may no longer rescind the transaction.

Id.; see also Rodrigues v. Members Mortgage Co., 323 F. Supp. 2d 202, 209 (D. Mass. 2004) (holding the practice of requiring borrower to certify at closing the three-day period had expired and the transaction had not been rescinded "has the serious potential for actual harm."); Adams v. Nationscredit Fin. Servs. Corp., 351 F. Supp. 2d 829, 834 (N.D. Ill. 2004) (finding a certification of election not to rescind signed at closing "was, quite simply, untrue" and the average borrower would be confused); and Pulphus v. Sullivan, No. 02 C 5794, 2003 WL 1964333, at *15 (N.D. Ill. April

28, 2003) (holding where, among other things, the borrower signed confirming the transaction had not been rescinded on the date the loan closed, she stated a claim for violation of TILA).

We find the reasoning of these cases persuasive. On April 22, 2005, the Mouas were asked to sign a statement acknowledging they had been advised of their right to rescind the loan transaction within three business days or no later than midnight April 26, 2005. At the same time, they were instructed to sign a statement certifying that three business days had elapsed and they had not rescinded the transaction. Requiring borrowers to sign statements which are contradictory and demonstrably false is a paradigm for confusion. The Mouas signed a statement on April 22, 2005, certifying it was April 26, 2005. The average borrower would be confused when instructed to certify a falsehood, and as to the effect of the falsehood.

Rand argues Rodash is inapposite and this case is controlled by the Eleventh Circuit's later decision in Smith v. Highland Bank, 108 F.3d 1325 (11th Cir. 1997). Smith, however, is readily distinguishable. In Smith, the borrower was presented a form containing an Acknowledgment of Receipt, indicating he had been provided notice of his rescission rights. The same form included a Certificate of Confirmation indicating the three-day rescission period had passed and the borrower had elected not to rescind. Id. at 1326. The borrower argued placement of the two on the same form was confusing and violated TILA. Id. The Eleventh Circuit distinguished Rodash, noting the acknowledgment and certificate there had appeared on the same page and in the same paragraph. In Smith, the acknowledgment and certificate appeared in separate paragraphs and required separate signatures. Id. at 1327. More importantly, the evidence showed the borrower had not signed to certify the passage of the three-day rescission period until it had *actually* passed. Id. Because the Mouas are not arguing that placement of the Receipt and Confirmation sections on the same form was confusing, Smith is unpersuasive.

-10-

Accordingly, we conclude Rand violated TILA by failing to clearly and conspicuously disclose the Mouas' three-day right to rescind the transaction, thereby giving rise to a three-year period of rescission.

## III

The judgment of the district court is reversed and we remand for further proceedings consistent with this opinion.[6]

_____

[6]Because we conclude the Mouas had up to three years from the date of the transaction to exercise their right to rescind, we do not reach the remaining issues raised by the Mouas.