# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1947

_____

Mavis Hartman, Roger Hartman,
and Maul Lee Hartman

*Plaintiffs - Appellants*

v.

Brian J. Smith, Jennifer Smith,
and Prime Security Bank

*Defendants - Appellees*

Midwest Equity Consultants, Inc., a Minnesota
corporation, and Midwest Equity Consultants,
Inc., an Illinois Corporation

*Defendant*s

_____

No. 12-2012

_____

Mavis Hartman, Roger Hartman,
and Maul Lee Hartman

*Plaintiffs - Appellees*

v.

Prime Security Bank

*Defendant - Appellant*

Brian J. Smith, Jennifer Smith,
Midwest Equity Consultants, Inc.,
a Minnesota corporation, and
Midwest Equity Consultants, Inc.,
an Illinois Corporation

*Defendant*s

————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

————————

Submitted: February 13, 2013
Filed: August 19, 2013

————————

Before SMITH, MELLOY, and BENTON, Circuit Judges.

————————

SMITH, Circuit Judge.

Roger and Mavis Hartman, a married couple, (collectively, "the Hartmans") and their daughter, Maul Lee Hartman, (collectively, "the plaintiffs") filed suit seeking damages and rescission under TILA and asserting various state law claims against persons and entities involved in transactions related to the financing of an addition to a house on their property. The district court granted summary judgment to defendants on the TILA rescission claim, dismissed several other claims, and then held a jury trial on the rest. The jury found for the defendants on all remaining claims, and the court entered judgment in favor of the defendants. The plaintiffs now appeal, arguing that the district court erred in granting summary judgment and in dismissing various claims before trial. Defendant Prime Security Bank ("Prime") cross-appeals, arguing that the court erred in finding that the plaintiffs' notice was sufficient to

exercise the TILA statutory right of rescission. We reverse on the notice issue, but otherwise affirm the judgment of the district court.

## I. *Background*

The Hartmans jointly owned an unimproved property located in Carver County, Minnesota. The city of Victoria issued the Hartmans a permit to build a structure on the property for non-residential use. Roger Hartman built a single-family dwelling on the property and moved into the home. Several years later, on June 23, 2006, the Hartmans filed a plat with the county that identified the property as Block 1, Lot 2 of the Hartman Addition Plat 3. The Hartmans recorded the property in the real estate records exclusively in the name of Mavis Hartman. On August 3, 2006, Mavis signed and delivered a quitclaim deed for the property to Maul Lee Hartman, and filed the quitclaim deed with the Carver County Office of the Registrar of Titles. Roger did not sign the quitclaim deed.

Roger began construction of an addition to the house on the property. By January 2007, Roger determined that he needed more money to complete the construction. Roger was unable to obtain financing from traditional lenders, so he contacted Brian Smith of Midwest Equity Consultants, Inc. ("Midwest"), a corporation in the business of obtaining loans for financially distressed clients. Brian Smith and his wife, Jennifer Smith, (collectively, "the Smiths") and the plaintiffs together entered into an unconventional real estate financing arrangement. On February 21, 2007, three transactions occurred. First, the plaintiffs executed and delivered a warranty deed transferring the property to the Smiths in fee simple. Second, the Smiths obtained a loan from Anchor Bank for $280,000 and placed a mortgage on the property for the same amount. Finally, the Smiths loaned $280,000 to the plaintiffs and then entered into a contract for deed with them, agreeing to reconvey the property to Mavis and Maul Lee upon repayment of the $280,000. The contract for deed specified that the Smiths reserved the right to place a mortgage on

the property in an amount up to the remaining balance of the purchase price, and Mavis and Maul Lee agreed to execute any such mortgage.

By August 2007, Roger determined that he needed more money to complete construction. On August 1, 2007, four more transactions occurred. First, the Smiths and the plaintiffs amended the contract for deed to increase the principal amount to $495,500. Second, Brian obtained a new loan from Prime in the amount of $495,500. As the plaintiffs had agreed under the original contract for deed, they joined the Smiths in placing a mortgage on the property with Prime for $495,000. The Smiths satisfied the $280,000 mortgage with Anchor Bank. Third, the Smiths and the plaintiffs assigned all of their respective interests in the contract for deed and the underlying property to Prime. Fourth, the Smiths signed a $495,500 promissory note to Prime.

More transactions occurred on November 13, 2007. First, the Smiths, Mavis, and Maul Lee amended the contract for deed to $664,000. And, second, the Smiths modified their note and mortgage with Prime to $664,000. The plaintiffs again joined in the modified mortgage.

Roger completed construction on the home in late 2007. But Mavis and Maul Lee failed to make scheduled payments toward the contract for deed with the Smiths, and on June 26, 2008, the Smiths served a statutory notice of cancellation of the contract for deed. On August 15, 2008, the plaintiffs sent a letter to the Smiths and to Prime, stating that they cancelled and rescinded any and all transactions occurring on February 21, August 1, and November 13, 2007. Prime replied that it could not rescind because it had no transactions with the plaintiffs. On August 25, 2008, the 60-day cancellation period for the contract of deed expired without the plaintiffs taking action to reinstate the contract for deed or seeking judicial relief to enjoin its cancellation. The Smiths ceased making mortgage payments to Prime, and Prime commenced foreclosure proceedings on November 25, 2008. On February 10, 2009,

the property was sold at a sheriff's sale. The six-month redemption period expired on August 9, 2009.

On June 24, 2009, the plaintiffs filed a 13-count complaint naming as defendants the Smiths; Midwest Equity Consultants, Inc., a Minnesota corporation; Midwest Equity Consultants, Inc., an Illinois corporation; and Prime. Under count one, plaintiffs sought a declaratory judgment that the warranty deed transferring fee title to the Smiths and the corresponding contract for deed between the Smiths and the plaintiffs constituted an equitable mortgage. Under count two, the plaintiffs sought damages and rescission of all transactions with all of the defendants pursuant to the Truth in Lending Act (TILA), as amended by the Home Ownership Equity Protection Act, 15 U.S.C. § 1602 et seq. Under counts eleven and twelve, the plaintiffs alleged state-law claims under Minnesota Statutes Annotated § 58.18. Prime filed an answer in which it pleaded affirmative defenses based on various statutes of limitation and the doctrine of laches. The Smiths also filed an answer stating various affirmative defenses and counterclaiming for unjust enrichment. The Smiths thereafter failed to make further filings with the court or to respond to requests for discovery. Neither of the Midwest Equity Consultants corporations filed an answer, and on October 14, 2009, the court entered default judgment against them.

The plaintiffs and Prime filed cross-motions for summary judgment. In its summary-judgment memorandum, Prime argued that the plaintiffs' right to rescind under TILA is barred by statute because the plaintiffs' action was not commenced until July 2009 and the property had already been sold at the sheriff's sale on February 10, 2009. *See* 15 U.S.C. § 1635(f). The plaintiffs filed a response memorandum, and then Prime submitted its reply. In that reply, Prime argued that

> [I]n August of 2006 Plaintiff Mavis Hartman, the fee owner of the Subject Property, transferred ownership of the Subject Property by a quit claim deed to her daughter Maul Lee Hartman, who owned and occupied her own townhome at all times relevant to these proceedings. . . . .

At the time of the February 2007 title transfer to the Smiths, Maul Lee was the sole owner of the Subject Property. After the contract for deed back from the Smiths, she had an undivided one-half interest as a co-vendee with her mother. It is Plaintiffs' contention that the February 2007 Smith transaction was an equitable mortgage and not a transfer of title. (Complaint, Count I) Under Plaintiff's theory of the case, Maul Lee Hartman remained the sole owner subject to the Smith equitable mortgage and the Prime Security Bank mortgage which she executed. Alternatively, Maul Lee Hartman owned an undivided one-half interest as a co-vendee under the contract for deed. In either event she was neither obligated on the promissory notes given by the Smiths to Prime Security nor is she considered a consumer under 12 C.F.R. [§] 226.2(a)(11) since she did not grant a lien on her principal dwelling. Prime Security's mortgage against Maul Lee Hartman's interest in the property is not subject to rescission.

Thus, Prime argued that Maul Lee had no rescission rights because the property was not her primary residence.

The district court held a hearing on the cross-motions for summary judgment. Thereafter, the court issued an order granting summary judgment to the plaintiffs on count one, finding that the transactions with the Smiths were an equitable mortgage. As for the plaintiffs' TILA rescission claim, the court found that

neither Roger Hartman nor Mavis Hartman held an ownership interest in the Subject Property at the time of the transactions at issue here. They placed fee title to the Subject Property in Mavis Hartman's name on June 23, 2006, and Mavis Hartman transferred that ownership interest to Maul Lee Hartman by a quitclaim deed on August 3, 2006. Moreover, by treating the February 2007 transaction as an equitable mortgage, Maul Lee remained the sole owner of the Subject Property after November 13, 2007, subject to the Smith equitable mortgage and the Prime mortgage. Therefore, at all material times in this case, Maul Lee Hartman was the sole owner of the Subject Property. As a result,

-6-

> Plaintiffs Roger Hartman and Mavis Hartman could never rescind because they did not have the requisite ownership. Further, because the Subject Property was not Maul Lee Hartman's principal dwelling at the time of these transactions, she also did not have a right of rescission under the TILA. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' TILA rescission claim and Plaintiffs' motion is correspondingly denied.

*Hartman v. Smith*, Civil No. 09-01618 MJD/RLE, 2010 WL 3735724, at *9 (D. Minn. Sept. 17, 2010).

The plaintiffs and Prime each submitted a letter request to file a motion for reconsideration. The plaintiffs' letter request argued for the first time that the Minnesota homestead law may apply to void Mavis's quitclaim conveyance of the property to Maul Lee. The court granted each party's request to file a motion for reconsideration. The plaintiffs and Prime each filed motions along with supporting memoranda. The plaintiffs argued that the quitclaim deed was an attempt to convey a homestead interest under the Minnesota homestead law but that such a conveyance is void without the signatures of both spouses, *see* Minn. Stat. Ann. § 507.02, and Roger did not sign the quitclaim deed. Prime's memorandum argued that the plaintiffs were attempting to make improper use of the Minnesota homestead law "as a sword for the purpose[] of creating a TILA revocation right rather than [as] a shield to defeat a claim by Roger's daughter that she owns the property." Further, Prime's memorandum argued that Roger was estopped from asserting the protection of Minnesota's homestead law because he consented with full knowledge to Mavis's quitclaim conveyance of the property to Maul Lee. The plaintiffs filed a response memorandum in which they further argued the homestead issue. The court found that Roger consented to the transaction with full knowledge and that the Hartmans were estopped to claim that Roger or Mavis has any interest in the property. The court thus denied both motions for reconsideration.

Thereafter, the court sent a letter to the parties requesting written responses to six questions. Two of those questions were as follows:

> Judge Davis's September 17, 2010 Order states that "at all material times in this case, Maul Lee Hartman was the sole owner of the Subject Property. As a result, Plaintiffs Roger Hartman and Mavis Hartman could never rescind because they did not have the requisite ownership." In light of this ruling, what standing do Mavis and Roger Hartman have if they had no right to the Subject Property?

> * * *

> Do Plaintiffs have any specific authority, other than that listed in their submitted jury instructions, that assignment for collateral purposes would make Prime Security Bank an assignee under TILA?

The parties submitted written responses, and the court held a telephone conference on the issues. In an order dated March 6, 2012, the court found that the Hartmans were no longer parties in interest to the litigation based on the fact that they had no ownership interest in the property subsequent to the quitclaim deed of the property to Maul Lee. Consequently, the court dismissed the Hartmans as parties to the case. In the same order, the court found that Prime is not an assignee for purposes of the plaintiffs' TILA damages claim. Therefore, in a subsequent order dated March 9, 2012, the court dismissed the TILA damages claim against Prime. A jury trial was held on several remaining claims. Based on the jury's verdict, the district court entered judgment in favor of the defendants on all remaining claims.

## II. *Discussion*

On appeal, the plaintiffs argue that the district court erred in granting summary judgment to Prime on their TILA rescission claim, in dismissing their TILA damages claim and their state law claims against Prime under Minnesota Statutes Annotated § 58.18, and in dismissing the Hartmans as plaintiffs. Prime cross-appeals, arguing

-8-

that the court erred in finding that the plaintiffs' notice was sufficient to exercise the TILA statutory right of rescission.

## A. *Exercise of the TILA Right of Rescission*

The plaintiffs argue that the district court erred in granting summary judgment to Prime on the TILA rescission claim. On cross-appeal, Prime argues that the court correctly granted its motion for summary judgment, but it argues that the court erred in finding that the plaintiffs' notice was sufficient to exercise the right of rescission under 15 U.S.C. § 1635. Prime contends that the plaintiffs no longer have the right to seek rescission of the transactions because the plaintiffs failed to file their suit for rescission prior to the foreclosure sale on February 10, 2009.

> We review de novo a district court's grant of a motion for summary judgment. *J.E. Jones Constr. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007). "Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.*

*Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 528 (8th Cir. 2009).

Under TILA,

> in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until . . . the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, . . . by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a) (1995); *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998) ("[W]hen a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately.").[1] "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." 15 U.S.C. § 1635(f). Furthermore, the implementing Regulation Z provides, in pertinent part:

> To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

12 C.F.R. § 226.23(a)(2).

The district court "disagree[d] with Prime's assumption that a plaintiff must file a lawsuit in order to exercise their right of rescission." *Hartman*, 2010 WL 3735724, at *8. Furthermore, the court found that the "[p]laintiffs' August 2008 Rescission Letter was within the three-year rescission period and well before the February 2009 foreclosure sale." *Id.* Consequently, the court ruled that the "[p]laintiffs' claim is not barred by section 1635(f)." *Id.*

The plaintiffs argue that this court's opinion in *Rand Corp. v. Yer Song Moua*, 559 F.3d 842 (8th Cir. 2009), requires that we affirm the district court's ruling on this issue. In *Rand*, borrowers facing foreclosure sent a letter notifying the lender that they

---

[1]Paragraph 154 of the plaintiffs' complaint alleges that "Defendants failed to provide each Plaintiff with: * * * [a] clear and conspicuous Notice of Right to Rescind the mortgage loan transaction as required by 15 U.S.C. § 1635(a) and Reg. Z[,] [C.F.R.] § 226.23(a) and (b)." This allegation is not disputed on appeal.

-10-

were rescinding their mortgage. *Id.* at 844. The property was sold at a sheriff's sale and the borrowers' redemption period expired six months later. *Id.* The borrowers did not exercise their redemption rights. *Id.* The lender filed suit against the borrowers, and the borrowers counterclaimed, alleging, inter alia, that TILA's statutory three-year right to rescind had been "triggered by Rand's failure to provide clear and conspicuous notice of TILA's three-day post-transaction right to cancel." *Id.* at 845. The district court granted summary judgment to the lender, and the borrowers appealed. We reversed, finding that the lender had "violated TILA by failing to clearly and conspicuously disclose the [borrowers'] three-day right to rescind the transaction, thereby giving rise to a three-year period of rescission." *Id.* at 848. Here, the plaintiffs argue that, "[i]n [reversing], [this court] believed the intervening, extra-judicial 'sale' did not bar the [borrowers] from securing an order enforcing" their right of rescission. Here, the plaintiffs maintain that the borrowers in *Rand* "had a right to rescind and the court believed it had jurisdiction to declare the right was exercised and to also enforce the right. Otherwise, it could not have decided the merits."

*Rand* is distinguishable. "[T]he core issue" before our court in that case was "whether the [borrowers] had a three-year—rather than three-day—period in which to rescind the transaction." *Rand*, 559 F.3d at 842. Our analysis focused on whether the *lender* had fulfilled its initial disclosure and notice requirements. *Id.* at 845–48. The question of whether the *borrowers'* notice was sufficient to exercise their right of rescission under 15 U.S.C. § 1635 was not addressed. *See id.* "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925). Because *Rand* did not address the question presented here, we find that *Rand* is not controlling on whether filing a lawsuit is necessary to exercise consumer rescission rights under TILA.

Among the federal circuits, "[t]here is a split of authority as to whether the borrower must file a lawsuit within [the repose period] after the consummation of a

-11-

loan transaction to exercise [his or] her right to rescind, or whether the borrower need only assert the right to rescind through a written notice within the [repose] period." *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 276 (4th Cir. 2012). The Third and Fourth Circuits have held that valid, written notice is effective, by itself, to effectuate rescission. *See id.* at 276–77; *Sherzer v. Homestar Mortg. Servs.*, 707 F.3d 255, 258–61 (3d Cir. 2013). The Ninth and Tenth Circuits, on the other hand, have held that notice is not sufficient; those courts have held that the borrower must assert rescission in a legal action to complete the exercise of the rescission right. *See McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1327–30 (9th Cir. 2012); *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1185 (10th Cir. 2012).

Very recently, we joined the Ninth and Tenth Circuits in holding that notice is not sufficient to exercise the right of rescission. *Keiran v. Home Capital, Inc.*, Nos. 11-3878, 12-1053, 2013 WL 3481366, at *5 (8th Cir. July 12, 2013). *Keiran* found persuasive the Tenth Circuit's analysis of the "remedial economy" of TILA's rescission remedy in *Rosenfield*. *Id.* at *4. *Rosenfield* concluded that "the filing of an action in a court (or perhaps a defensive assertion of the rescission right in a court) . . . is required to invoke the right limited by the TILA statute of repose." 681 F.3d at 1183. As that case explained,

> It may be, strictly speaking, that "by notifying the creditor, in accordance with [Regulation Z]," 15 U.S.C. § 1635(a), a borrower may properly alert the creditor of her *intent to rescind* the underlying transaction. However, as [the borrower] would have it, transmission of such notice would be *all that is required* to exercise the right of rescission. The problem with this argument is that, in a significant number of instances, the remedial economy of the remedy would be jeopardized. *See* [Andrew Kull, *Rescission and Restitution,* 61 Bus. Law. 569, 577 (2006)]. Specifically, it is self-evident that when a borrower who has provided notice to a creditor decides later—at some unknown, and perhaps distant, point in the future—to effectuate the rescission right through judicial process, the underlying circumstances

-12-

in no small number of cases are likely to have changed significantly. Just to provide one example: new actors may have come onto the field post-transaction and obtained some interest in the loan or the underlying property. *Cf. Beach,* 523 U.S. at 418–19, 118 S. Ct. 1408 (recognizing that TILA's statute of repose acts to limit the clouding of a property's title). And, as a consequence of this reality, enforcement would likely be costly and difficult. In short, such an outcome is not consistent with the general goal and application of a rescission remedy.

*Id.* at 1185 (first alteration in original). The Tenth Circuit's opinion further explained that TILA and Regulation Z do not

establish[] that notice is a *sufficient* condition for the exercise of the TILA rescission right. Read plainly, *see Beach,* 523 U.S. at 416, 118 S. Ct. 1408 ("[I]n this instance, the answer is apparent from the plain language of § 1635(f)."); *see also United States v. Lamirand,* 669 F.3d 1091, 1094 (10th Cir.2012) ("[W]e begin with the text of [the statute]."); *Copar Pumice Co. v. Tidwell,* 603 F.3d 780, 794 (10th Cir.2010) (suggesting that deference must be given to an agency's interpretation of a regulation, *unless* the plain language counsels otherwise), these provisions suggest only that the giving of notice is a *necessary* predicate act to the ultimate exercise of the right, *see* 12 C.F.R. § 226.23(a)(2) (suggesting that "the consumer shall notify the creditor of the rescission" *in order to* "exercise the right to rescind")—not that it is sufficient for such exercise.

*Id.* (second, third, and fourth alterations in original).

Consistent with *Keiran*, and with *Rosenfield*'s persuasive reasoning, we hold that "the giving of notice is a *necessary* predicate act to the ultimate exercise of the right." *Id.* Giving notice, as the means by which one comes to "have the right to

-13-

rescind," is not sufficient, in itself, to complete the exercise of that right.[2] *See* 15 U.S.C. § 1635(a). The district court erred in finding that the plaintiffs' notice was sufficient to exercise the right of rescission under § 1635. Consequently, the plaintiffs' "right of rescission . . . expire[d] . . . upon the sale of the property" on February 10, 2009.[3] *Id.* at § 1635(f). Because the plaintiffs failed to file a rescission "action in a court (or perhaps a defensive assertion of the rescission right in a court)" prior to the sale, their claim is barred. *Rosenfield*, 681 F.3d at 1183. It follows that the district court did not err in granting summary judgment to Prime on the plaintiffs' TILA rescission claim.[4]

---

[2]Section 1635(a) creates the right to rescind under TILA. That subsection provides, in pertinent part, that "the obligor shall have the right to rescind the transaction . . . by notifying the creditor . . . of his intention to do so." 15 U.S.C. § 1635(a). By the plain language of the statute, giving notice is not the means by which the obligor *exercises* the right to rescind, but the means by which the obligor "*ha*[*s*] the right to rescind." *Id.* (emphasis added). Further, the obligor's notice to the creditor does not actually rescind the transaction but merely communicates the obligor's "*intention* to [rescind the transaction]." *Id.* (emphasis added). Section 1635(a) establishes how the statutory right to rescind arises, i.e., by giving timely and proper notice of intent to rescind. Assuming that one *activates* the statutory right by giving timely and proper notice (as the plaintiffs did here), § 1635(f) establishes the conditions under which that right *expires*.

[3]The plaintiffs also argue that the sheriff's sale was not a "sale" within the meaning of 15 U.S.C. § 1635(f). This argument was raised in *Worthy v. World Wide Financial Services, Inc.*, 347 F. Supp. 2d 502 (E.D. Mich. 2004) *aff'd*, 192 F. App'x. 369 (6th Cir. 2006). As that court noted, the Official Staff Commentary to Regulation Z provides, "'A sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind.'" *Id.* at 506 (quoting 12 C.F.R. § 226.23(a)(3) (Supp. I. 1995)).

[4]Because we hold that the plaintiffs' notice was not sufficient to exercise the right of rescission, we do not reach the plaintiffs' claim that the district court erred in allowing Prime to assert estoppel as a defense to the plaintiffs' homestead argument in its motion-to-reconsider memorandum.

-14-

B. *Dismissal of TILA Damages Claim and Minnesota Statutes Annotated § 58.18 Claim*s

"We review de novo . . . the district court's dismissal of plaintiff's claims . . . ." *Helvey v. City of Maplewood*, 154 F.3d 841, 844 (8th Cir. 1998) (citing *Kohl v. Casson,* 5 F.3d 1141, 1148 (8th Cir. 1993)). Count two of the plaintiffs' complaint sought damages under TILA against both the Smiths and Prime. The plaintiffs argue that Prime was the Smiths' assignee for purposes of 15 U.S.C. § 1641(e)(1), which states that "any civil action against a creditor for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor." In a pretrial order dated March 6, 2012, the district court found that Prime was not an assignee for purposes of § 1641(e)(1). The court stated:

> Under TILA, a "creditor" is one to whom the obligation is initially payable. A creditor's assignee, then, would be one to whom the obligation is initially payable by way of an assignment. Here, the obligation is the Smiths' loan to the Hartmans. The Contract for Deed between the Smiths and Mavis and Maul Lee Hartman—not the loan between the Smiths and the Hartmans—was assigned. [Prime] is not the one to whom the Hartmans' obligation is initially payable; the Hartmans' obligation is initially payable to the Smiths. The interest assigned to [Prime] through the Assignment of [Contract for Deed] was a security interest for the loan from [Prime] to the Smiths. Under these circumstances, [Prime] does not fall within TILA's concept of assignee.

(Footnote omitted) (third alteration in original). In a separate pretrial order dated March 9, 2012, the court dismissed the plaintiffs' TILA damages claim against Prime.

Prime argues that the plaintiffs' claim for damages against it is now moot. Prime argues that because the plaintiffs "subsequently dismissed the TILA damages claims against the Smiths at trial," the plaintiffs claims against it under § 1641(e)(1) must fail. Prime maintains, essentially, that "an assignee's liability can be no greater

than the assignor's." *White v. Homefield Fin., Inc.*, 545 F. Supp. 2d 1159, 1165 (W.D. Wash. 2008) (quotation and citation omitted). In reply, the plaintiffs argue that "Prime did not order a trial transcript to support its theory and it should be ignored."

Neither the plaintiffs nor Prime ordered a trial transcript, so the trial transcript is not in the record on appeal. Nevertheless, the plaintiffs' opening brief acknowledges that the district "court disposed of all claims and entered judgment on March 19, 2012." That judgment, which *is* part of the record on appeal, Fed. R. App. P. 10(a)(1), shows that "[j]udgment [wa]s entered in favor of the defendants and against each plaintiff." Thus, even supposing that the plaintiffs did not dismiss their damages claim against the Smiths during trial, their claim certainly did not survive the March 19, 2012 judgment against them. Therefore, on this record, we determine that the plaintiffs' damages claim against the Smiths had no merit. The plaintiffs' damages claim cannot now "be maintained against" Prime because it has no greater liability than the Smiths. 15 U.S.C. § 1641(e)(1). Consequently, the district court did not err in dismissing plaintiffs' TILA damages claim against Prime.

The plaintiffs also argue that the court erred in dismissing their claims against Prime for violations of Minnesota Statutes Annotated § 58.18 in connection with counts eleven and twelve of the complaint. The plaintiffs argue for the first time on appeal that their state-law claims arose from Prime's conduct as the servicer of the equitable mortgage with the Smiths. The plaintiffs did not assert this argument below,[5] and "[w]e will not address arguments raised for the first time on appeal." *Colonial Ins. Co. of Cal. v. Spirco Envtl., Inc.*, 137 F.3d 560, 561 (8th Cir. 1998) (citations omitted).

---

[5]The plaintiffs did mention this issue very late in the litigation below. But that mention came only in a single paragraph of a letter to the court requesting leave to file a motion to reconsider the court's order of dismissal dated March 6, 2012. The court treated the plaintiffs' letter as a motion to reconsider and denied it without addressing the merits of the argument.

C. *Dismissal of the Hartmans as Plaintiffs*

Finally, the plaintiffs argue that the court erred in dismissing the Hartmans as parties to the case. The court dismissed the Hartmans as plaintiffs in an order dated March 6, 2012, finding that they were no longer parties in interest to the litigation because they had no ownership interest in the property subsequent to Mavis's quitclaim of the property to Maul Lee. Given the disposition of the various claims by the district court and this court's particular affirmations above, it is not necessary for us to venture into the thicket of legal issues raised by Mavis's quitclaim of the property to Maul Lee. The claims resolved by the district court and now reviewed on appeal would not increase their merit at either level by having the Hartmans added as parties. Plaintiffs have shown no other reason why the court's action was error. Consequently, we find no error in the district court's dismissal of the Hartmans as plaintiffs.

III. *Conclusion*

Accordingly, we reverse the district court's finding that the plaintiffs' notice was sufficient to exercise the TILA statutory right of rescission. We affirm the district court's grant of summary judgment, the dismissal of the plaintiffs' claims, and the dismissal of the Hartmans as parties to the case.

MELLOY, Circuit Judge, concurring in the judgment.

I concur in the judgment insofar as this Court is bound by decisions of prior panels. Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002). Were we writing on a clean slate, however, I would hold for the reasons stated by Judge Murphy in her dissent in Keiran that sending notice within three years of consummating a loan is sufficient to "exercise" the right to rescind. See 12 C.F.R. § 1026.23(a)(2). I note three additional points:

First, although TILA does not provide an express statute of limitations for borrowers to sue for rescission, the statute does provide an express statute of limitations for borrowers to sue for damages. See 15 U.S.C. § 1640(e) ("[A]ny action under [§ 1640] may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . ."). That Congress provided a statute of limitations governing suits for damages demonstrates that it knew how to impose such a limitation and would have done the same regarding suits for rescission if it so desired; instead, however, the provision governing rescission states only that "the obligor shall have the right to rescind the transaction . . . by *notifying* the creditor, in accordance with regulations of the Bureau, of his intention to do so." 15 U.S.C. § 1635(a) (emphasis added). And as the Keiran majority recognized, "Regulation Z says nothing about filing suit." __ F.3d at __, 2013 WL 3481366, at *5. But unlike the Keiran majority, who assumed that "while Regulation Z sets forth *one* of the things an obligor must do to rescind the loan—give written notice to the bank—it does not set forth the *entirety* of things necessary to accomplish rescission," id. (emphases added), I "do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and [my] reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 341 (2005); see Bates v. United States, 522 U.S. 23, 29–30 (1997) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (citation and internal quotation marks omitted)).

Second, the Ninth Circuit's decision in McOmie-Gray v. Bank of America Home Loans, 667 F.3d 1325, 1328 (9th Cir. 2012)—which, prior to Keiran, balanced the two–two circuit split between the Third and Fourth Circuits and Ninth and Tenth Circuits—offers only hollow support for the proposition that a borrower must file suit

-18-

to exercise the right to rescind. The <u>McOmie-Gray</u> court acknowledged that "[w]ere [it] writing on a blank slate, [it] might consider whether notification within three years of the transaction could extend the time limit imposed by § 1635(f)[,]" <u>id.</u> at 1328; however, the court declared itself "bound" by <u>Miguel v. Country Funding Corp.</u>, 309 F.3d 1161 (9th Cir. 2002). 667 F.3d at 1329. In my view, <u>Miguel</u> is not instructive on the issue that was before the <u>McOmie-Gray</u> court or presented in <u>Keiran</u> or in this case insofar as the borrower in <u>Miguel</u> did not send notice to the lender of her intent to rescind *or* file suit for rescission within the three-year statutory period.[6] <u>Miguel</u>, 309 F.3d at 1163; <u>see</u> <u>McOmie-Gray</u>, 667 F.3d at 1329 ("[T]he borrower [in <u>Miguel</u>] never sent a timely notice of rescission."). Accordingly, the <u>Miguel</u> borrower's right to rescind had "completely extinguishe[d] . . . at the end of the 3-year period." <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410, 412 (1998). This material fact differentiates <u>Miguel</u> from <u>McOmie-Gray</u>, <u>Keiran</u>, and this case, where the borrowers did timely send notice to the lenders within three years of the respective loan consummations.

Lastly, while I recognize the <u>Keiran</u> majority's concerns regarding the possible temporary uncertainties in titles if providing notice were sufficient to exercise the right to rescind, I do not believe that requiring lenders to initiate declaratory-judgment actions—rather than defend in rescission actions—is so undesirable that it reaches a level of absurdity such that this Court should ignore the plain language of the statute and Regulation Z. <u>See</u> <u>Contemp. Indus. Corp. v. Frost</u>, 564 F.3d 981, 985

---

[6]The borrower in <u>Miguel</u> timely notified and filed suit against the lender's *agent*, but the court determined that this was not the same as providing notice to the lender itself. <u>See</u> 309 F.3d at 1165 ("While the [lender's] servicing agent . . . received notice of cancellation within the relevant three-year period, no authority supports the proposition that notice to [the agent] should suffice for notice to the [lender]. Therefore, [the] right to cancellation was extinguished as against the [lender]."), <u>and</u> <u>id.</u> ("Because the complaint named only [the lender's agent] . . . it was not an effective cancellation, and the right in question was extinguished when the three-year period expired.").

(8th Cir. 2009) ("Where statutory language is plain, 'the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" (quoting Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004)); see also Harbison v. Bell, 556 U.S. 180, 198 (2009) (Thomas, J., concurring in the judgment) ("Even if the proper interpretation of a statute upholds a 'very bad policy,' it 'is not within our province to second-guess' the 'wisdom of Congress' action' by picking and choosing our preferred interpretation from among a range of potentially plausible, but likely inaccurate, interpretations of a statute." (quoting Eldred v. Ashcroft, 537 U.S. 186, 222 (2003)))).  This is especially true "because the obligor's initiation of a lawsuit would also unilaterally create a cloud on the title that would not be resolved *until a court order or a negotiated settlement*."  Keiran, __ F.3d at __, 2013 WL 3481366, at *11 (Murphy, J., dissenting) (emphasis added) (internal quotation marks omitted).

Moreover, "caution requires attentiveness to the views of the administrative entity appointed to apply and enforce a statute," and "deference is especially appropriate in the process of interpreting [TILA] and Regulation Z," unless such deference would lead to "demonstrably irrational" results.  Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980).  Here, the administrative agency charged with enforcing TILA and Regulation Z is the Consumer Financial Protection Bureau (the "Bureau").  See Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1100A(2) (2010).  The Bureau has weighed in as amicus curiae in courts around the country on the issue of how a borrower properly exercises the right to rescind a loan transaction, see, e.g., Sherzer v. Homestar Mortg. Servs., 707 F.3d 255 (3d Cir. 2013)—including in Keiran—and argued that sending notice is all that is required.

———————————————